ENGELKE & FEINER MILLING COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF MISSOURI, *Plaintiff in Error,* v. ISADOR GRUNTHAL, *Defendant in Error.*

1. A defect in the return of the service of a writ summons *ad respondendum* is not reached by a motion to quash or abate the

writ, but the motion should be addressed to setting aside the service.

2. A demurrer to a plea which neither traverses nor confesses and avoids the allegations of a declaration, and which seeks by indirection and inference to avoid the trespass complained of, is properly sustained.

3. It is not erroneous in an action of trespass to refuse leave to a defendant to file pleas which set up facts that may be shown under the general issue of not guilty.

4. In an action of trespass for seizing, taking and carrying away goods and chattels, and converting them to defendant's use, where it was shown by the plaintiff that his goods and chattels were seized by the sheriff under a writ of attachment issued by the defendant, on the 18th of December, 1895, which writ was dissolved on the 3rd of January, 1896, it is competent for the defendant to show, under the plea of not guilty, that other writs of attachment against the defendant were issued by other persons with whom defendant in no way colluded, at or about the same time as his own, and the several writs levied by the sheriff on the same goods of defendant at or about the same time, and that after the dissolution of defendant's writ the goods of plaintiff which were of a perishable nature were held by the sheriff under such other writs and were sometime afterwards sold by order of the clerk on the petition of such other party or parties; and on this showing the proper measure of damages will be the difference in the market value of the goods on the day when defendant's writ of attachment was levied and their value on the day when such writ was dissolved.

5. A special appearance combined with a motion to quash the writ of summons, supported by affidavits filed in support thereof and in opposition thereto and the rulings of the court thereon, and exceptions thereto, and also a motion to file additional pleas, with the pleas offered therewith, and the order of the judge denying the motion, and exceptions to this ruling, are matters proper to be exhibited to the appellate court only in and by a bill of exceptions.

This case was decided by Division A.

Writ of error to the Circuit Court for Duval county.

*D. U. Fletcher* for plaintiff in error.

BRIEF FOR PLAINTIFF IN ERROR.

In the Supreme Court of the State of Florida.

The Engelke & Feiner Milling Company (Corporation), *Plaintiff in Error,* v. Isidor Grunthal, *Defendant in Error.*

## Statement.

This is an action of trespass brought by Isidor Grunthal in the Circuit Court of Duval county, against The Engelke & Feiner Milling Company, a corporation under the laws of the State of Missouri. The declaration contained one count, and alleged that the defendant with force and arms took and carried away certain goods, wares, merchandise, live stock and personal property described therein. The defendant first attacked the service, but the motion to quash was overruled. Then the defendant demurred and the demurrer was not sustained. Defendant then pleaded not guilty and a further plea of justification. The latter was demurred to and the demurrer was sustained. Defendant then offered and applied for leave to plead facts setting up that the property attached by it was seized by the sheriff one minute thereafter under two other writs of attachment against the same debtor, defendant in attachment, this defendant in error, and was, then and after the dissolution of attachment in favor of plaintiff in error, held by the officer under said other attachments and was subsequently disposed of and the proceeds went, partly to the defendant in error as his exemptions and partly to said other attaching creditor, being applied on an execution issued by such creditor and placed in the hands of the sheriff before the final disposition of said attachment by such other creditor, The Merchants National Bank. But the court refused to allow such plea to be filed, to which order exceptions were noted, as well as to the other orders above mentioned.

Trial was had on the declaration in trespass *vi et armis* and plea of not guilty. Plaintiff, defendant in error here,

proved that the defendant, plaintiff in error, sued out its writ of attachment against said defendant in error for $565.83 and caused the property described in the declaration to be attached, seized and removed by the sheriff on, to-wit, the 29th day of December, 1895, at 5:29 o'clock p. m.; that on the 3rd day of January, A. D. 1896, defendant in error made his motion to dissolve said attachment on the grounds that the affidavit and bond were insufficient and defective and such motion was granted and the attachment was dissolved.

It was shown by the defendant that all the property attached by it, plaintiff in error, was sold after the dissolution of said attachment, under the statute as perishable property, by order of the clerk on the petition of the Merchant's National Bank, an attaching creditor, and the defendant in error made a claim for his exemptions which were set off to him, $1,000.00, out of the proceeds, and the sheriff collected on account of an execution he then held in favor of The Merchants' National Bank against said Grunthal, $1,000.05, out of said proceeds.

The testimony differed as to the value of the property at the time and place it was attached; according to plaintiff's testimony the market value was about $5,850.00 and according to defendant's testimony about $2,857.00. Verdict was rendered in favor of the plaintiff below and judgment was entered against defendant below, for $4,403.67 and $9.03 costs, on the 26th day of May, A. D. 1900. Writ of error was sued out by the defendant, here the plaintiff in error, returnable July 23rd, 1900.

### Upon the First Assignment.

Service on the defendant below was attempted to be made in pursuance of section 1019, Revised Statutes. The language of the return is "Received this summons on the 18th day of February, A. D. 1897, and executed the same on the 19th day of February, A. D. 1897, in the county of Duval, Florida, by delivering a true copy thereof to T. D.

Gibbens as the resident business agent of the within named defendant corporation, to-wit, Engelke & Feiner Milling Company, at that same time showing this original and making known the contents thereof."

The return does not state that T. D. Gibbens *was* the resident business agent. The officer says he delivered a copy to him *as* the resident business agent. There is no statement that he delivered a copy to *the* business agent, but only that he delivered a copy to a certain person *as* such agent. There is no statement that he showed the original to this person whom he attempted to serve *as* agent or made known the contents thereof to him.

The motion (page 5 of record) to quash was duly made and supported by affidavits to show that Gibbens was not, at the time of the alleged service, such or any agent of the defendant.

It was competent to thus attack the return, even though it had been full and sufficient.

22 Am. & Eng. Enc. Law, p. 195 and note, and p. 196; *Am. Bell Telephone Co. v. Pan Electric Telephone Co.,* 28 Fed. Rep. 625.

If Gibbens was not the agent, resident and transacting business for the defendant, the service was invalid.

22 Am. Eng. Enc. Law, p. 130.

But the return here was insufficient and did not show a valid service on its face. The motion should have been granted. Of course service could only be had on a foreign corporation and such corporation can only be sued in the manner pointed out by the statute.

Serving some person just as he would an agent, or some person whom he selected as agent, was certainly no real and valid service, and this is all the return shows.

The *manner* of service, the character and capacity of the person on whom process was attempted to be served as to his relations with and to the defendant show there was no valid service and the defendant had the privilege

of objecting to being so sued and did object in the proper manner, appearing specially for that purpose.

It was error to make the order denying said motion. (Page 9.)

### Upon the Second Assignment.

The defendant's second plea, following the plea of not guilty, page 9 of the record, was a good plea.

It sets up that the property alleged to have been taken, seized and carried away by the defendant was taken into custody and possession of the sheriff of Duval county in a suit wherein the Merchants' National Bank was plaintiff and said Grunthal was defendant, and that there never was any taking or seizing of the said property in the said declaration stated, other than by the said sheriff under and by virtue of the writ of attachment and other writs of attachment. In other words there was no trespass *vi et armis* committed by defendant. Whatever wrong and injury was done was done by the sheriff under *mesne process* issued against the goods of the plaintiff (defendant in error) in favor of another party—that the taking of the goods was done by the sheriff acting for other parties. Certainly this plea was good as showing there was no trespass such as alleged; that the goods and property described were seized and carried away under and by virtue of writs of attachment, not by defendant but by the sheriff of the county in pursuance of process of the court, not writs controlled by defendant but other parties altogether. If these facts were true the defendant was not liable to an action of trespass *vi et armis*. If they were true the defendant was not liable at all, to any action, that is, if the goods were taken under writs of attachment other than defendant's; at least defendant would only have been liable for such injury as *it* inflicted, not for the injury and wrong done by others. The demurrer (page 11 of record) to this plea was improperly sustained. (Page 11½.) Authorities will be cited covering

this point in the further discussion, particularly under the next assignment.

### Upon the Third Assignment.

The defendant gave notice (page 12) and applied to the court for leave to file the pleas set forth on pages 13, 14 and 15 of the record, which application the court refused. These pleas contained averments, not necessary to repeat here, which would have shown that plaintiff could not maintain his said action against this defendant. The 3rd was good in bar. The 1st and 2nd were good in any event in confession and avoidance. The 1st and 2nd pleas were sufficient and proper at least, to require replication and to let in proof in mitigation.

In support of these pleas and to save repetition, we argue in support of the 8th and 9th assignments of error.

(a) It was competent to show that the property involved was held, when our attachment was dissolved, by the officer, upon writs of attachment issued by the Merchants' National Bank, even if those attachments were subsequently dissolved; that in one of the suits judgment was obtained by the Merchants' National Bank against said Grunthal on the 11th day of April, 1896, and execution was issued thereon on the 12th day of June, 1896, that while the sheriff had the same property still in his possession the said bank, May 29th, 1896, filed its petition to sell under section 1655, Revised Statutes, and that order of sale was made May 30th, 1896; that he sold the property at the instance of said bank in one of said suits and converted it into money June 13th, 1896, and applied the proceeds in his hands towards said execution, except such portion of the proceeds as Grunthal claimed as exempt and had set off to him. (See pages 266, 267 and 268 of record.)

There was no evidence that the property depreciated in value between the time of the levy of our writ and the receipt by the sheriff of the subsequent writs under which he seized it. There is no evidence that the property de-

preciated in value between the time of the levy of the writ
of attachment of plaintiff in error and its dissolution. If
the sheriff had other writs then it was his duty to levy them
on that property. If those writs were dissolved but an ex-
ecution came to the hands of the sheriff it was his duty to
levy the execution on the property, and even if all the at-
tachments were void the execution was valid, the levy of
it was proper and lawful and if this property was seized,
taken and applied on the execution and did not bring its
value it was *damnum absque injuria.* The only liability
resting on the plaintiff in error, the plaintiff in the attach-
ment suit, would be for any depreciation in the value of the
property between the time of levying the attachment writ
and the coming to the hands of the sheriff of the writ of
*fieri facias.*

*Evans v. Virgin,* 7 Am. St. Rep. 870.

In that case the court said, page 872, "The property
being perishable, was, under the order of the court, properly
converted into money, which was held by the sheriff in
lieu of the property attached. The proceeds of such prop-
erty, consisting of money in the hands of the attaching of-
ficer, at the time when the execution was received by him,
were rightfully levied upon, and paid over and returned as
so much money collected," etc.

Freeman on Executions, sec. 130, page 179, is cited and
says, sec. 135, "But the officer who has levied on property
may hold the same to answer for subsequent writs which
come into his hands while the first levy remains in force.
The mere receipt of a subsequent writ operates as a con-
structive levy upon all the property actually or constructively
in his possession under a prior writ."

Says the court, *supra,* "Of course, the same rule is
applicable to successive attachments."

*Halpin v. Hall,* 42 Wis. 176, 1 Am. & Eng. Enc. Law,
p. 927, subdv. 10.

"Subsequent valid levies necessarily exclude those prior

in point of time but wanting in compliance with the law in essential particulars."

1 Wade on Attachments, sec. 219; 1 Am. & Eng. Enc. Law, p. 927; *Robinson v. Ensign,* 6 Gray, 300.

"So here we must hold that, upon the dissolution of the attachment, the money realized thereon, and in the hands of the sheriff, is not to be regarded in the custody of the law in such sense as to preclude the sheriff from applying it upon the execution against the property of the same defendants, issued to and received by the same officer after the receipt of the money."

The court held that said proceeds, so in the hands of the sheriff, were legally liable to be taken on the execution as they were, and that payment thereof by the sheriff to the plaintiff in execution, to apply to the execution, was a full compliance on his part with the order to deliver the firm property to the defendants, and was a complete discharge thereof. (Pages 871 and 873.)

Apply those principles to the present case, and we come logically to the conclusion that when one attachment was dissolved if the sheriff held other attachments against Grunthal it was his duty to hold the property and if before those attachments were finally dissolved and disposed of the property had been sold as perishable under the statute and reduced to money and a valid execution came to the hands of the sheriff in favor of one of these subsequent attaching creditors, it was the duty of the sheriff to apply the proceeds in his hands to the execution and doing so was a lawful, proper act and compliance with the order of dissolution— that is, it was a return of the property to the defendant in attachment, and the plaintiff in the attachment suit is not responsible for the property after dissolution of its attachment. Such was the case here. Even if the bank's attachment were dissolved subsequently, and the bank became a trespasser *ab initio* and a wrong-doer in taking the property, the judgment in favor of the bank and the execution were valid, never questioned, and this execution was issued June

12th, 1896, and the sale of the property took place June 13th, 1896, under the attachment proceedings. It was subject to the execution and would have been sold under the execution if not sold as perishable property under sec. 1655, Revised Statutes. The bank was not a wrong-doer in enforcing its execution. The rule mentioned by the trial court, pages 200 and 201, does not apply.

We offered to show this state of facts but the court refused to allow us to prove the facts regarding the subsequent attachment writs, and what was done under them. This was error.

We did, however, show the sale of the identical property at the instance of the Merchants' National Bank (pages 266 and 267) and we did show the execution (page 267) and that there was received thereon from such sale of the property the sum of $1,000.05, which did not satisfy the execution by about $1,535.57 (p. 267 of record).

The plaintiff in error is only responsible for the actual damage done by its writ up to the time of the dissolution of its attachment, and no more, and there is no evidence that the property was not intact, and in good condition and had suffered no depreciation up to that time.

Certainly, in mitigation of damages, it was competent to show the same property as we seized was levied on immediately afterwards under other writs of attachments, and when one writ was dissolved the same property was held by the sheriff under and by virtue of such other writs and was subsequently disposed of in proceedings in those suits.

Beyersdorf v. Samp, 12 Am. St. Rep. 678, and authorities cited above; Drake on Attachment, sec. 185 c. (5th Ed.); 2 Sutherland on Damages, 60; 1 Am. & Eng. Enc. Law, p. 927, 928, subdv. 10.

The same doctrine is announced in Sherry v. Schuyler, 2 Hill, 204, where the court says: "The evidence offered and rejected was clearly in mitigation of damages, as it would have gone to show that, independent of any agency on the part of the defendant, the property in question had been

applied to the payment of the plaintiff's debt due to a third person."

If it be argued that the evidence was not admissible because the defendant did not plead such facts, we submit that the court erred in refusing to allow the pleas filed, which were tendered and the same authorities are applicable to the question raised by the 3rd assignment of error.

When the defendant below offered and endeavored to be permitted to set up such facts, by way of plea, and the court refused to allow such pleas filed, to which objection and exceptions were noted, it can not be successfully argued that this evidence would have been admissible had such pleas been in but as they were not in the court did not err in refusing to admit the evidence.

Besides the general rule is, the defendant may show, under the general issue, all the circumstances of the transaction, and may prove the goods were taken from it under distress for rent, for instance.

26 Am. & Eng. Enc. Law, 647.

To maintain the plaintiff's claim for damages, they must appear to be the legal and natural consequences of the wrong complained of, proceeding exclusively from that, and not from the improper act of a third party remotely induced thereby.

*Crain v. Pestria,* 6 Hill, 524.

So the plaintiff was obliged to make out a case of trespass with force and arms and to show that he lost his property solely and exclusively by the act of the defendant, the plaintiff in error.

His proof established no such case, and the evidence even now in shows that his property was made way with by others—the identical property described in the declaration.

The court will see by reference to the petition for sale by Merchants' National Bank and the writ of attachment issued by plaintiff in error, that the indentical articles were sold under sec. 1655, Revised Statutes, at the suit

of said bank against Grunthal and the proceeds went to Grunthal and the bank on its execution.

The only possible theory upon which this plaintiff in error can be held responsible for the value of the goods seized is that it was one of joint wrong-doers, and each wrong-doer is responsible for all damages caused by the tort committed by it and other attaching creditors acting with him and at the same time seizing the same property. Will counsel so contend?

In the case of *Stringfield v. Hirsch,* 45 Am. St. Rep. 741, the court held in a suit involving damages caused by wrongful attachment, "It is error to charge each attaching party the full amount of their damages, or to give a joint judgment against them. There was no joint tort by the attaching creditors. If wrongfully suing each creditor is liable for his own tort." There is no joint liability for distinct and different torts.

To the same effect is *Burton v. Knapp,* 81 Am. Dec. 474 and note.

Now we offered to show that two other writs of attachment in favor of Merchants' National Bank were levied by the sheriff in one minute after ours was levied by the sheriff on the same property; that he held these writs when he levied ours, that he seized and took and carried away the property under all the writs and detained and held it under the latter writs after ours was dissolved, and we got nothing in our suit, but the other creditors and Grunthal got the proceeds of the property.

By what principle of law or rule of justice can we be held solely and exclusively liable for the value of all that property? Even if we were a trespasser *ab initio* the property taken by us was also taken by others and it left our hands entirely Jan'y 6th to go into theirs exclusively, and they and Grunthal and not we got the proceeds.

*Upon the Fourth, Fifth and Sixth Assignments.*

The motion to strike the testimony of plaintiff below, Grunthal, appears at page 134 of the record, and need not

be stated here, and refusal to grant said motion is assigned as error No. 4.

The same motion was made as to testimony of Ernest Grunthal and the plaintiff below, page 140, and refusal to grant it is assigned as error No. 6.

The objection to the reading in evidence the writ of attachment, return thereon, motion to dissolve and order thereon (pages 136 and 137 of record) should have been sustained, and all testimony by Ernest Grunthal as to the levy of a writ of attachment and such objection being numbered No. 5 is assigned.

These may appropriately be discussed together.

The court will keep in mind the declaration in this case is one in an action of trespass *vi et armis,* pure and simple (pages 2, 3, 4 and 5 of record). There is no averment of malice. There is no allegation of a seizure by attachment, the dissolution of the attachment, the want of cause and malice in suing out the writ.

An action for the wrongful suing out of an attachment, in the absence of malice, can be maintained only on the attachment bond.

In order to maintain an action independently of statutes and not on the bond, malice in suing out the writ must be averred and shown.

*Tallant v. The Burlington Gas Light Co.,* 36 Iowa 262.

No action lies for one whose property is attached and who has suffered damage in consequence of a civil action which has been abated, unless the prosecution of the suit was malicious.

*Lindsay v. Larned,* 17 Mass. 189.

Says the court in 36 Iowa, page 264, "We have found no case holding, in the absence of any averment of malice and want of probable cause, or that the property levied on was exempt, or not liable to attachment, that an action independently of any statute would lie for the wrongful suing out of an attachment. The remedy, like the writ of

attachment, is created by statute and would seem to be exclusive."

In that case the plaintiff sought to recover damages for the alleged wrongful suing out of the writ of attachment in an action wherein the defendant therein was plaintiff and the plaintiff therein was a defendant, upon which writ his property was seized and held for several years to his injury. It was not averred that the property attached was not subject to attachment. The declaration was demurred to and raised the question whether, in the absence of any allegation of malice or want of probable cause, a common law action for damages is maintainable under the facts stated. The demurrer was sustained by the lower court and that judgment was affirmed and sustained by the Supreme Court.

In *Lindsay v. Larned,* 17 Mass. 189, there was an action on the case in which the plaintiff declared the defendant commenced an action in Massachusetts against him on promissory notes in January, 1819, and in March, 1819, commenced a similar action in East Florida on the same notes and there caused him to be annoyed and his property to be attached and held for thirty days when the latter suit was dismissed and the attachment dissolved and discharged on the account of the suit so pending in Massachusetts. The action was brought to recover the damages sustained by reason of the plaintiff having his goods attached, taken and detained on mesne process at the suit of the defendant, which suit was dismissed.

There was evidence tending to show the value of the articles attached in East Florida and the damage sustained by Lindsay in consequence of the suit there. The judge of the lower court was of the opinion that the plaintiff could not maintain the action, and a non-suit was taken. This was sustained by the Appellate Court.

The court says, page 196, "In the case at bar, no malice is imputed to the defendant. Anxious to recover a considerable debt he took these measures, and these only under

the best advice which he supposed were adopted to that purpose, without any apparent desire to vex or harass his debtor. Undoubtedly the present plaintiff has sustained considerable loss in consequence of the suits which the plaintiff instituted." But after referring to the fact that the plaintiff had never paid the notes, the court says, "We go upon the ground that malice on the part of the defendant, is a necessary ingredient in an action of this nature; and that it is lawful for any man to enforce his supposed rights by any lawful process." The head note reads, "No action lies for one where property has been attached and who has suffered much damage in consequence of a civil suit which was abated, unless the *prosecution of such suit were malicious.*"

We call attention to the other language in this case, which applies to the case at bar, and is in point to the error assigned herein. On page 195 the court said, "The question considered in the case of *Hayden v. Shed,* which was cited with some reliance at the bar, was whether *trespass* could be maintained against one who acted in virtue of lawful process, which was subsequently abated. And it was determined in the negative, the remedy for such injury being in *case* and not *trespass.*"

But it was not decided that *case* could be maintained without averring *malice.*

We call attention to *Hayden v. Shed,* 11 Mass. 500, which holds distinctly that *case,* and not *trespass,* is the proper action for one whose goods have been attached upon a writ which was afterwards abated because another suit was pending for the same cause of action. The action there was trespass for breaking and entering the close and dwelling house of the plaintiff and carrying away his goods by the defendant and converting them to his own use, etc.

It was the same form of action which we have in the case at bar.

The defendant pleaded not guilty as to the force and arms and as to the residue a justification under mesne pro-

cess sued out by the defendant against the plaintiff, by virtue of which the defendant entered the house, took the goods, etc. Plaintiff replied that Shed directed the sheriff and that Shed had previously sued out another writ and seized the property of Hayden and such proceedings were had that the said writ and declaration were abated and Hayden had judgment for costs. Defendant demurred to the replication. The court said, page 501, "The defendant sued out an original writ against the plaintiff and caused his goods to be attached; and the writ was afterwards abated on the plea of a former suit pending for the same cause of action, and the question is, 'whether trespass will lie against the defendant for that attachment. We are satisfied that an action upon the case is the *proper* and *exclusive* remedy for an injury of this kind."

It will be borne in mind that the attachment in the case was not dissolved on the merits, and there is no claim of want of probable cause. It was dissolved because of a technical defect in the affidavit and bond, only.

Let us keep in mind the general principles:

The declaration must contain a distinct and positive allegation of every fact essential to state completely the' cause of action.

26 Am. & Eng. Enc. Law, 622, 623, 647.

Proof must enforce the declaration. Proof can not be made of but one distinct, substantive right of action.

*Ib.,* p. 669.

The plaintiff is confined to the cause of action alleged.

39 Fla. 196.

Plaintiff declares upon a bald trespass with force and arms, and attempts to prove a wrongful attachment. *Case* and *not trespass* was the proper action.

26 Am. & Eng. Enc. Law, 699.

In Florida the action on the case remains substantially as at common law.

*Ib.,* 709 and 708.

The testimony offered by the plaintiff was not admis-

sible under his declaration. The case stated by his declaration was different from the case sought to be made by his proof.

We find in *Frantz v. Hanford et al.,* 87 Iowa 469, 54 N. W. Rep. 474, it is held, "Where an attachment is premature and unlawful, the only remedy, in the absence of malice, is on the attachment bond."

In the case of *Jones v. Fruin,* 42 N. W. Rep. 283, the action was brought by the defendant in error, to recover for a malicious attachment of property. The answer was a general denial. It appeared that the defendant caused a writ of attachment to be issued and levied on certain horses, wagons, etc., of the plaintiff and it was alleged that said order of attachment was wrongfully, maliciously sued out, and no just ground existed for issuing the same, and the statements in the affidavit as grounds therefor were false and untrue. The attachment was dissolved, the property ordered discharged. The court held that "To sustain an action for malicious attachment of property, it is necessary to prove want of probable cause, malice and damage to the plaintiff from the issuing of the attachment."

*Palmer v. Keith,* 16 Neb. 91, 20 N. W. Rep. 103 is cited; also see *Collins v. Shannon,* 67 Wis. 441, 30 N. W. Rep. 732.

In the case of *Storz et al. v. Finklestein et al.,* 46 Neb. 577, 66 N. W. Rep. 1020, there was an attachment issued by Storz and levied on the goods of Finkelstein, and this attachment was discharged. The action was brought upon the attachment bond by Finkelstein against Storz & Iler, principals, and Olsen, surety. The court held (see 4th headnote) in the case, "In the absence of malice, an action for the wrongful suing out of an attachment can be maintained alone on the attachment bond. To maintain an action independently of the statute, and not on the bond, malice in suing out the writ and want of probable cause must be averred and shown." It seems Storz & Iler did not sign the bond and referring to their liability as plaintiffs in the attachment suit, the court says (p. 1021), "They may

be, and doubtless are, liable for any damages that the plaintiff may have sustained *if they caused* his property to be *attached maliciously and without probable cause.* But such remedy of the plaintiff is not upon the bond but independent of it, in the way of an action for *malicious attachment* in which case he would be compelled to *allege and prove* want of probable cause *and malice."*

The defendants were allowed to plead as set off that the plaintiff was indebted to them for beer sold and delivered.

An instructive case is found in 24 S. E. Rep. 453, *Fourth National Bank v. Mayer,* 96 Ga. 728. The court said, "According to the rules of the common law and according to the adjudications of this court as well (see 29 Ga. 64 and *Wilcox v. McKenzie,* 75 Ga. 73, and cases cited in the opinion of the court pronounced in the latter case) an action on the case, for the recovery of general damages resulting from the suing out and levy of an attachment proceeding by garnishment or otherwise, can not be maintained unless it be alleged in the declaration and proven on the trial, that the proceeding was instituted both with malice and without probable cause. These are the concurring conditions incident to that action."

The court pertinently remarks (page 454) that a plaintiff might have sustained serious damage and been wholly unable to recover because of the good faith of the plaintiff in suing out an attachment. Hence there was legislation changing the statute as to the form of the bond and now when the action is on the bond the plaintiff may recover, if he sustain damage, and the plaintiff in attachment has failed, without reference to the question of good faith or absence of probable cause upon the part of the plaintiff in the attachment suit.

Drake on Attachment (5th Ed.), sec. 726, p. 632, says: "But, in the absence of any statute conferring the right, the defendant can not maintain an action against the plaintiff for the mere wrongful suing out of an attachment. Such

an action as we have seen, may be maintained on the attachment bond; but, on common law principles, the element of malice is indispensable to authorize an action on the case."

Citing, *McKullar v. Couch,* 34 Ala. 336, and *Benson v. McCoy,* 36 Ala. 710.

See, also, Drake on Attachments, sec. 153, and secs. 154 and 156.

It follows that the testimony tending to show a wrongful attachment was not competent or relevant to the case made by the declaration. That even if the form of the action had been *case* instead of *trespass,* it would have been necessary to aver and prove malice. Objections to the testimony should be sustained. The demurrer to the second plea of the defendant should have been overruled. Assignments of error, No. 3, 4, 5 and 6 are well taken and the court erred in the respects set forth in said assignments.

### Upon the Seventh Assignment.

The affidavit and bond constituting the basis of the attachment and a part of the attachment proceedings in the suit of *Engelke & Feiner Milling Company v. Grunthal,* filed December 18th, 1895, were admissible, after it had developed that the trespass complained of consisted in seizing and taking the property under the writ of attachment, by the sheriff, because they tended to show the plaintiff in the attachment suit, plaintiff in error here, pursued the steps required by the statute in relation to attachments·; that the grounds for the attachment were set forth in the affidavit, that the bond required was given, that the plaintiff in attachment acted in good faith and had proceeded according to law, and the presumption of malice would thereby be overcome, if such presumption arose.

It was competent for the defendant to follow this with proof that it had good cause to believe the grounds stated in the affidavit were true, and that the attachment writ was not sued out and levied wantonly or oppressively.

This is really an action for wrongfully suing out an attachment and not simple trespass.

In such case the plaintiff must show that the defendant had not good cause for believing the facts to be true upon which it based its affidavit for the writ.

*Burton v. Knapp,* 81 Am. Dec. 465 and note.

Malice is indispensable to an action for wrongful attachment.

*McKellar v. Couch,* 34 Ala. 336; *Benson v. McCoy,* 36 Ala. 710.

In *Vorse v. Philips,* 37 Iowa 428, it is held in action for damages for the wrongful suing out of an attachment the defendant may show in defense either, that he had good cause to believe the grounds stated for the writ to be true or that they were true in fact.

*Tisdan v. Neafir,* 68 Am. St. Rep. n. p. 268; see, also, *Forrest v. Collier,* 56 Am. Dec. 190.

It may be shown in mitigation of damages that the attached property has been returned to and accepted by the plaintiff.

*Lyon v. Yates,* 52 Barb. 237.

Or, that a valid attachment for the same cause or debt was subsequently sued out, or that the other attachments against the defendant were sued out and levied on the same property and were in force when the first attachment was dissolved; or that an execution was issued and lodged with the officer and was levied on the same property and the proceeds of the property applied to the execution.

*Otis v. Jones,* 21 Wend. 394; *Wekle v. Spellman,* 25 Hun. 99; *Melton v. Trustman,* 15 Ala. 535.

*Upon the Tenth and Eleventh Assignments.*

The court erred in refusing to allow the defendant, plaintiff in error, to read in evidence the affidavit (p. 59), bond (p. 61), writ of attachment (p. 62) and return of the sheriff (p. 63-70), motion (p. 71) and order (p. 72), and like papers in the suit of *Merchants' National Bank v. I. Grunthal,* being the same parties as above (p. 73-89) and (p. 92-102), showing the same property in these suits was seized and levied upon as in the suit of Engelke & Feiner

Milling Co. and these attachments in favor of Merchants'
National Bank were in force the first from 5.30 p. m. Dec.
18th, 1895, to Jan. 3rd, 1896, and the second one from Dec.
18th, 1895, at 5:30 o'clock p. m., to Feb'y 7th, 1896 (p. 86),
and on Jan'y 3rd, 1896, the Merchants' National Bank filed
another affidavit and bond in attachment against said Grun-
thal (p. 6-88) and another writ of attachment was thereupon
issued and levied (p. 93) on identically the same property
and other property as in the preceding writs (p. 93) in-
cluding the writ of Engelke & Feiner Milling Co. and this
attachment was not dissolved until long after Jan'y, 1896.
The petition of the bank (p. 102) and order of sale (p. 104)
all show the same property as plaintiff in error had origin-
ally attached was disposed of at the instance of Merchants'
National Bank under sec. 1655 of Rev. Stats. The order
allowing exemptions (p. 105) and the execution and return
(p. 107) show what became of the proceeds.

In the case of *Goodbar v. Lindsay,* 14 Am. St. Rep.
(Ark.) 54, it appears that Goodbar & Co. sued out an attach-
ment against Lindsley in an action at law, but failing to
sustain their case in that behalf damages were assessed in
the same proceeding, as authorized by the statute, against
them and their sureties in the attachment bond for the
wrongful issue of the attachment. The case was appealed
to the higher court and the question presented by the appeal
was,—did the evidence sustain the assessment of damages,—
$1,485.00 reduced by the trial court to $750.00.

The attachment went into the hands of the sheriff
simultaneously with two executions which had been issued
upon judgments recovered by other creditors against the
attachment defendant. The three writs were levied together
upon a stock of merchandise and live stock, books of account
and cotton. The merchandise and live stock were sold
under the execution, the defendant said under the attach-
ment,—but did not bring enough to satisfy them. The court
held :

1. The recovery in proceedings of this nature is confined strictly to compensatory damages,—although it was urged the attachment was maliciously sued out.

2. The recovery against the Goodbars and their sureties must be based on the injury that was done by *their writ,* without regard to what *another creditor* may have been induced by their example to do.

3. The rule that consecutive wrongs done by independent agents can not be joined together to increase the responsibility of one of the wrong-doers has been applied, with apparent correctness, in a case where the issuing of one wrongful attachment was the occasion of the issuing of others.

*Marqueze v. Southeimer,* 59 Miss. 430.

The defendant below, plaintiff in error here, offered to show that other writs of attachment were issued at the same time as its and were levied on the identical property its writ was levied on, by the same officer who had them with him when he made its levy and so levied them immediately, in one minute after the levy of its writ, and that the property was taken into the custody and control and possession of the sheriff under all the writs and removed for and on behalf of all and when the attachment of plaintiff in error was dismissed the sheriff held the same property, so seized and removed, under the said writs of attachment issued by the other creditors of defendant in error and subsequently sold the property under statutory proceedings in the suits of said other creditors and distributed the proceeds in said suits to such other creditors, except what was claimed and set off to defendant in error as exempt; but the court refused to admit this testimony and hence our 11th assignment of error. We contend it was relevant and proper because we were responsible only for wrong done under our writ and holding us responsible for the acts of others,-even though induced by us, which was not even pretended, was contrary to conscience and law and was error.

### Upon the Twelfth Assignment.

The defendant below, plaintiff in error, should have been permitted to show that when its attachment was dissolved there was no request to deliver up the property by Grunthal, showing that he knew the sheriff held it under attachments in favor of other creditors and that the property was no longer held at our instance or request.

We contend that when our attachment was dissolved, the lien ended, and it was the duty of the sheriff to return the property to the defendant in the attachment suit, Grunthal, and if he failed or neglected to do so, he alone is responsible.

We cite to this *Anderson v. Land,* 34 Am. St. Rep. 875. In this case the court says: "The writ was levied Feb'y 4th, the dissolution of the attachment Dec. 16th ended the lien and the owner of the property had a right to make any disposition of it he saw fit, no matter whether the property had actually been turned over to him by the sheriff or not. He could sell the property during the time the writ was in effect in such case, subject to the right of the attaching creditor under the writ and when the attachment was dissolved the purchaser's title would be complete."

"So far as the right of the officer is concerned his title is dependent for its continuance upon the continuing of the necessity of holding the property to answer the purpose of the writ. Upon the dissolution of the writ the necessity ceases and all his title to hold the property ceases. If upon the dissolution of the attachment the sheriff had refused to deliver the property to the defendant, the defendant could have maintained an action against him for its possession; and, on the other hand, if after the dissolution of the attachment, the defendant had taken possession of the property without its having been formally turned over to him, the sheriff would have had no power to enforce its redelivery to him." Hence if Grunthal did not take or obtain his property when our attachment was dissolved it was no

fault of ours. Hence we inquired of the sheriff whether Grunthal demanded his property and attempted to show the sheriff held it no longer at our instance or request but the court refused to allow these questions. Grunthal knew we were no longer holding it but he seeks here, unjustly, to say we kept and appropriated it.

The court further says, in this case (p. 877), "It follows conclusively that his right of possession ceased with the dissolution of the writ, and if he was afterwards clothed with authority to seize property of the defendant, he must act on *that* authority, independently of any *effect* or *power* of the *old writ.*"

Just exactly what we offered to show the sheriff did in the case at bar. Independently of our writ and after its effect and power had ended he held this identical property under and claimed authority vested by *other* writs.

We had a right to show it was his duty to hold the property already in his hands but not because of the first attachment now dissolved, but because of the later writs.

*Evans v. Virgin,* 72 Miss. 423.

Upon the dissolution of our attachment the defendant was entitled to a return of his property, so far as we were concerned, without reimbursing the sheriff for any expense in connection therewith.

*McReddy v. Rogers,* 93 Am. Dec. 333.

And all he had to do was to ask for it. It may be said we should have sent it to him. This argues precisely that we should have been permitted to show why we did not send it to him,—because the sheriff held it under other writs by other creditors.

When our attachment was dissolved the officer was bound, nothing else appearing, to restore, so far as we were concerned, the property attached to the defendant in that proceeding, Grunthal, and if he did not we can not be held liable for any injury by reason of such failure.

Drake on Attachments (5th Ed.), 426; 3 Am. & Eng.

Enc. Pl. & Pr., p. 94, 95; *Coulson v. Panhandle Natl. Bk.* 54 Fed. Rep. 359.

Regarding the sheriff as the agent of the defendant, still the only authority presumed by the law to have been conferred upon him, is an authority to do a lawful act belonging to his employment.

Story on Agency, sec. 308; Drake on Attachments, sec. 426.

Therefore, admitting that our writ was wrongfully issued, the plaintiff, Grunthal, could only recover such actual damages as resulted to him from being dispossessed of his property *during the time* the levy was continued in force.

*Rice v. Miller,* 8 Am. St. Rep. 630; *Bates v. Clark,* 95 U. S. 204; *Burton v. Knapp,* 81 Am. Dec. 474, note.

### Upon the Thirteenth Assignment.

The condition of the property at the time of the dissolution of our attachment was a matter bearing on the question of damages. We contend we were liable only, in a proper action, for the depreciation in the value of the property from the time we caused it to be seized to the time of the dissolution of our attachment—from Dec. 18th, 1895, to Jan'y 3rd, 1896. If there was no change in the condition of the property and it was worth as much at the time and at the place it was when the attachment was dissolved as at the time and the place it was attached, there was no actual damage inflicted or caused by us.

The measure of damages in case of wrongful attachment (such as this) subsequently dissolved, is the value of the goods seized at the time of the seizure and their value at the time of the dissolution of the attachment, with interest to that date.

*Watson v. Sutherland,* 5 Wall. 74; *Tisdale v. Major,* 68 Am. St. Rep., note 269; see *Bass v. Lee,* 55 Ark. 329; *Bates v. Clark,* 95 U. S. 204.

*Upon the Fourteenth Assignment.*

This was not the proper action for defendant in error to bring. His proofs did not conform to the declaration. He was not entitled to recover at all in this action. Therefore the court erred in instructing the jury to bring in a verdict in favor of the plaintiff, that is, find the defendant guilty of the trespass alleged in the declaration. The evidence did not make such a case as the declaration stated. The plaintiff could not recover for wrongful attachment, even in case, without alleging and proving malice and want of probable cause. So the authorities above cited show.

It was not sufficient for defendant in error, plaintiff below to show that this attachment was dissolved for technical defects in the bond and affidavit.

In the case of *Williams v. Hunter,* 14 Am. Dec. 597, it is held, "Action for unlawfully suing out attachment can not be sustained unless malice and want of probable cause are shown."

3 Hawks, 545.

The court said, page 599, "it is not for irregularly suing out an attachment that this action (case for unlawfully suing out attachment) will lie, but for suing it out for the purpose of oppression and wrong."

HALL, J., further said, "From the facts set forth the defendant might have believed that the plaintiff had absconded, or so concealed himself that the ordinary process of law could not be served upon him; and if he believed it, he was not amenable to the present action, although the facts were otherwise than he believed them to be."

See the note to this case.

Before the plaintiff below, defendant in error, was entitled to recover at all he should have shown that the plaintiff in attachment had no meritorious cause of action of that class in which the statute authorizes attachment.

*Stern v. Ross, Keen & Co.,* 22 Fla. 480; *Sharpe v. Hunter,* 16 Ala. 765; Drake on Attachments, sec. 170.

*Upon the Fifteenth and Sixteenth Assignments.*

The instruction was erroneous that the measure of damages was the market value of the property taken by the sheriff at the time it was taken, together with interest at the rate of eight per cent. per annum from that time, less the benefits the undisputed evidence show the plaintiff had received therefrom, $2,000.05.

We refer the court to authorities cited under the 13th Assignment showing the proper measure of damages in a case like this.

*Upon the Seventeenth, Eighteenth and Nineteenth Assignments.*

The instructions requested by defendant, plaintiff in error, Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 (pages 26-32 of the record) correctly stated the law of the case, and it was error to refuse them. Some instructions, not mentioned here, requested by defendant were embraced in the oral charge of the court, to-wit, Nos. 13, 14 and 15, but the propositions announced in those numbered above were sound and correct statements of law as the authorities herein before mentioned show.

We deem it unnecessary to discuss these instructions separately, or to point out in detail the authorities sustaining each of the charges. It would involve a repetition which would scarcely be of assistance to the court. What has before been said applies to these assignments. The motion for new trial is set forth at pages 18 to 22 both inclusive and, we contend, should have been granted.

The plaintiff in error, defendant below, was made responsible for property valued by the jury at $5,250.50 because it sued out an attachment and caused it to be levied by the sheriff, in a lawful effort to collect a debt due it by the defendant in error, defendant in the attachment suit, for $565.83, and this, because the court refused to allow it shown that the sheriff had with him at the time and immediately, one minute, after making the levy under its writ

levied the other two writs, issued by the Merchants' National Bank against defendant in error, upon the identical property and removed it and kept it under all the writs and when the attachment of plaintiff in error was dissolved, 16 days thereafter, its case was dismissed, suit ended, it got nothing, while the other attachments remained in force and still another attachment writ was issued and levied on said property by said bank, and all the property passed under these processes to other parties.

It was shown that the identical property was sold under petition of Merchants' National Bank, it being then in the custody of the sheriff under its writ (pp. 266 and 267 of record) (petition p. 102 and order p. 104) and it was shown that a valid judgment was obtained by said bank against said Grunthal and valid execution was issued thereon and came to the hands of the sheriff on June 12th, 1896, while said sale was had June 13th, 1896, at the time all said property in question in this suit was in the hands of the sheriff under writs not dissolved but in force, in favor of said bank, this plaintiff in error having ceased to have any connection whatever with the property on Jan'y 3rd, 1896, when its attachment was dissolved, and that the proceeds of said sale went to Grunthal to the amount of exemptions $1,000.00 and to the bank on its said execution to the amount of $1,000.05, the execution being for $2,525.26 and $10.10 costs (p. 107 of record).

The offer of this execution in evidence was objected to and the objection overruled as appears at page 267 of the record.

Under these circumstances, waiving all objections as to the procedure, ground of action, form of action, sufficiency of declaration and proof, it would seem a positive wrong to hold the defendant below, plaintiff in error, responsible for the entire property seized by the sheriff and removed under all the writs. The claim of plaintiff in error was only $565.83. The sheriff levied its writ and others in favor of another creditor of the defendant in attachment,

practically simultaneously, the others being in favor of another creditor of Grunthal and in much larger amounts, in over $5,000.00 worth of property. In 16 days the attachment of plaintiff in error was dissolved and so far as it was concerned the property was delivered to defendant in error. No depreciation in value was shown, no change in the condition of the property, no malice is alleged or proven.

The theory is, you took my property of the value of $5,250. and disposed of it for your own use and benefit and only gave me $2,000.05, and I hold you for the balance. The facts do not bear this theory out in any single, material particular. We think the judgment should be reversed.

### On the Facts.

The Grunthals were of course interested. The witnesses for defendant, Bowden, Munoz and Gibbens were entirely disinterested. Munoz and Gibbens have been merchandise brokers in Jacksonville for many years and are thoroughly familiar with all classes of goods and particularly such as are carried in stock by wholesale grocers in Jacksonville, and such as Grunthal had. Munoz valued the goods, making liberal allowances and giving highest prices where there was any doubt, at $2,444.06. Gibbens valued them at $2,743.00. Grunthal footed them up at $4,190.00. As between the estimates we submit Munoz and Gibbens furnished the weight of evidence and their valuation should have been accepted by the jury instead of Grunthal's.

For instance, Grunthal said tomatoes were worth 62½ cents for 2 lb. cans and 82½ cents for 3 lb. cans (p. 145).

Munoz swore they were worth, at the time and place seized, 50 cents for 2 lb. cans and 63 cents for 3 lb. cans (p. 214). Gibbens bears out Munoz. There were 905 cases of tomatoes.

Grunthal valued grits at $2.90 per bbl. (p. 143) and Munoz placed them at $2.00 per bbl. (p. 210). Gibbens agreed practically with Munoz. The difference in those two

items alone was very considerable. There were 79 bbls. of grits.

Bowden had experience as a livery man and knew the value of the horses, harness, buckboard, etc.

He valued the bay horse at $85.00 to $100.00, which Grunthal valued at $325.00.

. Bowden valued the sorrel horse at $65.00 to $80.00, while Grunthal valued him at $275.00.

Bowden valued the mare mule at $100.00, while Grunthal valued her at $185.00.

Bowden valued the horse mule at $75.00, while Grunthal valued him at $190.00.

Bowden valued the buckboard at $10.00 to $12.00, while Grunthal valued it at $45.00.

Bowden valued the harness at $10.00 to $12.00, while Grunthal valued it at $50.00.

Yet the jury took and accepted Grunthal's estimate. It is perfectly evident that he exaggerated the value of every single article and his bias and interest are shown at every step in the testimony. Bowden knew the property well, had it in his possession until it was sold under the order of the clerk and he was qualified to value it. His testimony was ignored by the jury. A new trial should have been granted. The verdict was contrary to the weight of the evidence, and there was no sufficient evidence to support the verdict.

Bowden's estimate of the value of the horses, harness, buckboard, carts, etc., aggregated $417.00. Grunthal's valuation of the property other than the contents of the store was $1,153.00.

It is plain that he was not giving the market value of the property but simply his own estimate of what it was worth to him. The verdict should have been set aside.

Finally we repeat, trespass *vi et armis* will not lie in a case like this. The remedy is *case* even where there has been a wilful malicious use of judicial process, and then the declaration must show a case of malicious prosecution,

otherwise the plaintiff's only remedy is on the attachment bond.

In Alabama and Tennessee there may be found exceptions to this rule but this would be by virtue of statute. The reason is a party has the right to sue,—the right to resort to the courts,—the legal right to invoke the process of the courts.—and when he does this and the alleged injury results from the employment and use of judicial process, trespass *vi et armis* does not lie.

When the plaintiff introduced the writ of attachment, return, motion to dissolve and order of dissolution he destroyed his case of trespass *vi et armis*.

Respectfully submitted,

Duncan U. Fletcher,
Of Atty's and Counsel for Plaintiff in Error.

---

*A. W. Cockrell & Son* for defendant in error.

BRIEF FOR DEFENDANT IN ERROR.

In the Supreme Court of the State of Florida.

Engelke & Feiner Milling Company, a Corporation Organized Under the Laws of the State of Missouri, Plaintiff in Error, v. Isadore Grunthal, Defendant in Error, for Movant.

### Statement.

Isadore Grunthal sued the corporation in an action of trespass for taking and carrying away his goods, and recovered judgment against it in the Circuit Court of Duval county.

To this judgment, the corporation sued out its writ of error returnable to the Supreme Court, July 23d, 1900, a day within the June term.

In the transcript of record, containing 290 typewritten pages, appear a bill of exception and an evidentiary bill signed by the circuit judge.

The errors assigned are as follows:

1st. The court erred in denying defendant's motion to quash the writ of summons and set aside the service herein filed March 1st, 1897, and said order on said motion having been made April 10th, 1899, and exceptions noted.

2d. The court erred in sustaining the plaintiff's demurrer to defendant's further plea following the plea of not guilty filed herein July 10th, 1899, said order on said demurrer having been made August 3d, 1899.

3d. The court erred in making the order refusing and denying the defendant's application to file the additional pleas requested and tendered May 2d, 1900, and in refusing to allow defendant to plead the matters set forth in said proposed pleas. Said order having been made May 2d, 1900, and exceptions noted.

4th. The court erred in refusing to strike out the testimony given by the plaintiff as to the levy of a writ of attachment on the goods of plaintiff issued in favor of defendant.

5th. The court erred in the admission of the testimony, offered by the plaintiff through the witness Ernest Grunthal and plaintiff, as to the levy of a writ of attachment on the goods of plaintiff issued in favor of plaintiff, to-wit, permitting the plaintiff to read in evidence the writ of attachment issued by defendant against the goods, chattels, lands and tenements of the plaintiff and the return of the sheriff thereon, and the motion to dissolve the same and the order of dissolution thereon.

6th. The court erred in refusing to grant defendant's motion to strike the testimony given for the plaintiff as to the trespass complained of, consisting of the levy of said writ of attachment and seizure of the property thereunder, as shown by the return thereon, even though said attachment was subsequently dissolved on the grounds shown.

7th. The court erred in refusing to allow the defendant to read in evidence the affidavit, filed December 18th, 1895, in the case of *Engelke & Feiner Milling Company v.*

*I. & H. Grunthal* for an attachment; also the bond made, at that time upon which said writ of attachment was based.

8th. The court erred in refusing to allow the defendant to introduce testimony by the witness R. F. Bowden and the records showing or tending to show that the said property so seized by the sheriff under said writ of attachment was dissolved, for the reason that the said sheriff held the said property and retained custody of it under and by virtue of two other writs of attachment in favor of the Merchants National Bank against the said plaintiff, issued out of the same court at practically the same time as defendant's writ, or immediately thereafter and levied on identically the same property one minute after defendant's writ of attachment was levied and not dissolved until after defendant's said attachment was dissolved.

9th. The court erred in not permitting the defendant to introduce testimony by the witness R. F. Bowden and the records to show or tending to show that the sheriff had in his possession the said two writs of attachment of the Merchants National Bank against the goods, chattels, lands and tenements of plaintiff when he exhibited defendant's writ to plaintiff and that he exhibited two other writs immediately thereafter and levied them on the same property, removed said property and held it under all said writs and after the dissolution of defendant's attachment said property was sold under proceedings in the said case in attachment of Merchants National Bank against said plaintiff and all proceeds went to said plaintiff and said Merchants National Bank, except said sheriff's costs, and defendant got nothing.

10th. The court erred in refusing to permit the defendant to read in evidence to the jury the said affidavit, bond, writ of attachment and return of the sheriff thereon, motion to dissolve, demurrer and order of dissolution in each of said cases of the Merchants National Bank against the plaintiff and the same papers in another and third case of said bank against the plaintiff.

11th. The court erred in refusing to permit the defend-

ant to introduce testimony by and through the witness R. F. Bowden and otherwise, showing that the said property was sold under an order of the clerk in the suit of Merchants National Bank against plaintiff made in pursuance of sec. 1655 of the Revised Statutes, what it brought and what became of the proceeds.

12th. The court erred in not allowing the defendant to introduce testimony through the witness Bowden that plaintiff never requested a return of the property when defendant's attachment was dissolved, and that he never held it at the request and instance of the defendant after that.

13th. The court erred in refusing to permit the witness Bowden to testify as to the condition of the property when defendant's writ was dissolved.

14th. The court erred in charging the jury of its own motion orally, the propositions of law therein contained, and particularly, to-wit, that "In this case under the undisputed facts in the testimony this jury will have to bring in a verdict in favor of the plaintiff; that is you should find the defendant guilty of the trespass alleged in the declaration."

15th. The court erred in instructing the jury as aforesaid that the measure of damages was the market value of the property taken by the sheriff at the time it was taken, together with interest at the rate of eight (8) per cent per annum from that time, less the benefits, the undisputed evidence showed the plaintiff had received therefrom, $2,000.05.

16th. The court erred in instructing the jury as aforesaid that "You are to find gentlemen, from the testimony according to the rules I have given you, what was the market value of the property taken on the 18th day of December, 1895. Finding that, that is the amount of damages, less the amount of $2,000.05, with interest to be computed at eight (8) per cent per annum from the 18th day of December, 1895."

17th. The court erred in making its charge to the jury in refusing to state the propositions to the jury requested

by the defendant and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12.

18th. The court erred in denying the defendant's motion for a new trial.

19th. The court erred in entering judgment in favor of the plaintiff and against the defendant.

The defendant in error, thereupon, moved this court to strike from that part of the transcript filed herein, embracing the record proper and contained in the first thirty-four pages thereof the following matters:

1. The alleged "motion to quash the summons," alleged to have been made March 1st, 1897, page 5 of transcript.

2. The alleged affidavit in support thereof, pp. 6, 7, 8 and 9 of transcript.

3. The alleged exception to the denial of said motion, p. 9 of transcript.

4. The alleged notice of motion, and tender of pleas, pp. 12, 13, 14 and 15 of transcript.

5. The alleged motion for a new trial, pp. 18, 19, 20, 21 and 22 of transcript.

6. The alleged ruling of the court denying the said motion.

7. The alleged exception of defendant thereto, p. 22 of transcript.

8. The alleged oral charges of the court purporting to have been given of its own action, pp. 23, 24, 25 and 26 of transcript.

9. The alleged charges purporting to have been requested by defendant below, plaintiff in error here, and the alleged ruling hereon by the court, pp. 27, 28, 29, 30, 31 and 32 of transcript.

10. The alleged exception endorsed on the alleged charges No. 1, requested by defendant, p. 26 of transcript.

11. The alleged exception to the refusal of the charges requested by defendant, p. 32 of transcript:—upon the ground severally applied to each of said specified matters,

that 'said matter has no legitimate place in said record proper.

The defendant in error further moved the court severally to strike the following several assignments of error:

1. Assignment of error No. 1, as follows:

"The court erred in denying defendant's motion to quash the writ of summons and set aside the service herein filed March 1st, 1897, and said order on said motion having been made April 10th, 1899, and exception noted."

2. Assignment of error No. 4, as follows:

"The court erred in refusing to strike out the testimony given by plaintiff as to the levy of a writ of attachment on the goods of the plaintiff issued in favor of defendant."

3. Assignment of error No. 5, as follows:

"The court erred in the admission of the testimony offered by the plaintiff through the witness Ernest Grunthal and plaintiff as to the levy of a writ of attachment on the goods of the plaintiff, issued in favor of plaintiff, to-wit, permitting the plaintiff to read in evidence the writ of attachment issued by defendant against the goods, chattels, lands and tenements of the plaintiff and the return of the sheriff thereon, and the motion to dissolve the same and the order of dissolution thereon."

4. Assignment of error No. 6, as follows:

"The court erred in refusing to grant defendant's motion to strike the testimony given for the plaintiff as to the trespass complained of, consisting of the levy of said writ of attachment and seizure of property thereunder, as shown by the return thereon, even though said attachment was subsequently dissolved on the grounds shown."

5. Assignment of error No. 8, as follows:

"The court erred in refusing to allow the defendant to introduce testimony by the witness R. F. Bowden and the records showing or tending to show that the said property so seized by the sheriff under said writ of attachment was not returned to the plaintiff when said attachment was dissolved for the reason that the said sheriff held the said

property and retained custody of it under or by virtue of two other writs of attachment in favor of the Merchants National Bank against said plaintiff, issued out of the same court at practically the same time as defendant's writ or immediately thereafter and levied on identically the same property one minute after defendant's writ of attachment was dissolved."

6. Assignment of error No. 9, as follows:

"The court erred in not permitting defendant to introduce testimony by the witness R. F. Bowden and the record to show or tending to show that the sheriff had in his possession the said two writs of attachment of the Merchants National Bank against the goods, chattels, lands and tenements of plaintiff when he exhibited defendant's writ to plaintiff, and that he exhibited said two other writs immediately thereafter and levied them on the same property, removed said property and held it under all said writs, and after the dissolution of defendant's attachment said property was sold under proceedings in the said case in attachment of Merchants National Bank against said plaintiff, and all the proceeds went to said plaintiff and said Merchants National Bank, except said sheriff's costs, and defendant got nothing."

7. Assignment of error No. 11, as follows:

"The court erred in refusing to permit defendant to introduce testimony by and through the witness R. F. Bowden and otherwise, showing that said property was sold under an order of the clerk in the suit of Merchants National Bank against plaintiff, made in pursuance of sec. 1655 of the Revised Statutes, what it brought and what became of the proceeds."

8. Assignment of error No. 12, as follows:

"The court erred in not allowing the defendant to introduce testimony through witness Bowden that plaintiff never requested a return of the property when defendant's attachment was dissolved, and that he never held it at the request of the defendant after that."

9. Assignment of error No. 13, as follows:

"The court erred in refusing to permit the witness to testify as to the condition of the property when defendant's writ was dissolved."

10. Assignment of error No. 14, as follows:

"The court erred in charging the jury of his own motion orally, the propositions of law therein contained, and particularly, to-wit, 'that in this case under the undisputed facts in the testimony this jury will have to bring in a verdict in favor of the plaintiff; that is you should find the defendant guilty of the trespass alleged in the declaration.' "

11. Assignment of error No. 15, as follows:

"The court erred in instructing the jury as aforesaid that the measure of damages was the market value of the property taken by the sheriff at the time it was taken, together with interest at the rate of eight per cent per annum from that time, less the benefits, the undisputed evidence showed the plaintiff had received therefrom $2,000.05."

12. Assignment of error No. 16, as follows:

"The court erred in instructing the jury as aforesaid, that 'you are to find, gentlemen, from the testimony according to the rules I have given you what was the market value of the property taken on the 18th day of December, 1895. Finding that, that is the amount of damages less the amount of $2,000.05, with interest to be computed at eight per cent per annum from the 18th day of December, 1895.' "

13. Assignment of error No. 17, as follows:

"The court erred in making its charge to the jury in refusing to state the propositions to the jury requested by defendant and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12."

14. Assignment of error No. 18, as follows:

"The court erred in denying defendant's motion for a new trial upon the ground applicable to each of said several specified assignments has no basis in said record to support it."

The defendant further moves the court to strike from the transcript the evidentiary bill of exceptions, pp. 130 and 278, upon the ground it is not made to appear in this transcript in such form that a revising court can regard it or entertain an assignment of error predicated upon it, that the court below refused to grant a new trial on the ground that the verdict was contrary to the evidence or not supported thereby.

*Brief on Motion.*

The transcript, in the first thirty-two pages thereof, contains what purports to be the Record *proper,* wholly unaided by bills of exceptions.

The record proper *can* present to this Court for *review,* only "questions of jurisdiction, or the sufficiency of the pleadings or of the form or substance of the judgment."

*City of Jacksonville v. Lawson,* 16 Fla., 321-322.

The mere fact that a paper is found among the files in a common law cause does not of itself make it a part of the record. If not a part of the pleadings or process, it must be put into the record by some action of the court directing it to be made a part of the record.

*England v. Gebhart,* 112 U. S., 502-505.

The motion docket,—upon which motions are inscribed, and the inscription thereon of a motion for a new trial with the grounds therefor was held, under the former statute,— Thomp. Dig., 351—in *Dupois v. Thompson,* 16 Fla., 65, 71, to be equivalent to a filing,—is no part of the record, properly so called, of the court; and if a motion is spread upon it, which either party desires should be made a part of the record proper, it must be done upon motion to have it enrolled as a matter of record, *or* by bill of exception, which is the usual form.

*Waring & Co. v. Gilbert & Bro.,* 25 Ala., 295; *Jefferson City v. Opel,* 67 Mo., 394; *Stodder v. Grant & Nichels,* 28 Ala., 416; *Robinson v. Hood,* 67 Mo., 660.

This principle, as to the constituent element of a record proper, and as to the makeup thereof, has been recognized

and enforced by this court in *Temple v. Florida L. & I. Co.,* 23 Fla., 59-60, where it is declared, in reference to the statute providing for the keeping "regular and fair minutes of the proceedings of the court," to be signed by the judge before the adjournment of term, "An entry upon the motion docket does not satisfy the rule; the usual form of such entry is by the judge writing across the face of the motion the words 'motion granted' or 'motion denied,' or some other abbreviated expression indicating the will of judge and from which the clerk may make up the formal record or minutes of the court." Indeed, the ruling of the court endorsed on a pleading demurred to—the plea and the demurrer being confessedly a part of the record *proper,*—indicating the will of the judge, expressed in abbreviated form, from which the clerk may make up the formal record or minutes of the court, does not show the judgment of the court, thereon, which this court can review.

*Southern Express Co. v. Ashford,* 28 South. Rep. 732.

*Obviously,* the several matters identified in the motion, severally designated, numerically, as one, two, three, four, five, six and seven, have no *legitimate* place in the *record proper.* The clerk has no authority to incorporate the said matters *therein.*

As to the alleged oral charges given by the court, of its own motion, designated in this motion as matter No. 8 : If such matter, *proprio vigore,* inserts itself into the record, it must be by force of section 1089, Revised Statutes, as amended by chapter 4388, Acts of 1895. It is submitted, this legislation neither seeks to introduce nor introduces into the record an oral charge of the court, caught on the fly by the stenographer, and afterwards put in long hand and approved by the court. Nor does this legislation by its inherent force make a part of the record, *any* charge, given by the court *sua sponte,* whether in writing or not, *for* which a request is not made in writing *before* the evidence is closed.

*Burroughs v. The State,* 17 Fla., 643, text 661.

If it be that a presumption, the record being silent, as to a request to charge having been preferred in writing *before* the evidence is closed, may be indulged by this court for the purpose of *sustaining* the action of the Circuit Court; it can *not* be indulged to put the court below *in error*.

As to matter, designated as No. 9 moved to be stricken, This matter purports to be charges, requested by the defendant below and refused by the court, sought to be reviewed here. In the rules prescribed by this court, for preserving for *review,* charges requested by a party and refused by the court below, it is ordered that all charges given or refused, upon which exceptions are taken and errors assigned, whether "made up from memoranda in writing or exceptions to the rulings of the court during the progress of the trial and signed in open court, or otherwise," Special Rule 1, shall be embodied in a bill of exceptions presented as therein provided. In Special Rule 3, prescribing the frame of a bill of exceptions, provision is made for inserting therein the charge requested by the defendant *in full,* and the substance of the evidence upon which it was predicated; and, logically, provision is therein made for inserting into the bill of exceptions, if the supposed error of the refusal to charge has been corrected by another charge or charges not excepted to and not assigned as error, such *other* charge or charges.

It is submitted there is no principle of law, nor rule of practice, nor suggestion of convenience or economy, which would require or tolerate the insertion into the *record proper* of matter which is required or permitted to be duplicated into a bill of exceptions, and which may *not* be reviewed in the *absence* of a bill of exceptions. At the June term 1880 it was decided by this court in *So. Ex. Co. v. Van Meter,* 17 Fla. 783, 6 head note: "If the instructions of the court are signed and sealed by the judge they become a part of the record; but in order to *review* here any exception taken to them, the *exception* must be authenticated in a proper manner by bill of exceptions, embracing so much of

the proceedings on the trial as is necessary for the consideration of the exception taken."

The matters severally designated as No. 10, No. 11, have no legitimate place in the record *proper*.

Realizing this, the plaintiff in error has put into its bill of exceptions the instructions, pp. 109 to 112 of transcript given by the court, *sua sponte, and the exception* of the defendant thereto as follows: "To the giving of which *said charges* the defendant excepted."

It has also inserted into its bill of exceptions, pp. 113 to 130, the charges it requested, and *just as* these were requested, and the refusal of the court to give these *just as they* were refused, *and* the trend of testimony upon which the request to charge was predicated.

The said several matters as they appear in the record proper should therefore be stricken as prayed.

As to the first assignment of error: "The court erred in denying the defendant's motion to quash the writ of summons *and* set aside the services. No *such* motion was made. The motion that was in fact made is found on p. 33, of the transcript. It was to quash *the writ,* nothing more; the ruling of the court on *that* motion is found on p. 41; the court did not rule nor was it asked to rule on the *sufficiency* of the service; there is no basis in the ruling that was made, upon which *the* error assigned may be predicated.

. No foundation for the 4th assignment of error:

The record, bill of exceptions, p. 51, does *not* show the court took *any* action on the motion "to strike out testimony given by plaintiff as to the levy of a writ of attachment on the goods of the plaintiff in favor of the defendant;" nor that such a motion was made.

The motion that was *in fact* made was "to strike out *said* testimony given by this witness," an integral part of which testimony was an offer to prove that Grunthal, the witness, was the plaintiff in the case. *No* action, however, was taken on said motion.

So, there is *no* foundation for the 5th assignment of error. Pages 51 and 52 of the record show *what* was proposed to be proved by witness, Ernest Grunthal, and *what* was admitted, and *what* the objection of the defendant was. It was a single, undivided, integral objection "to the *admission* of Ernest Grunthal as a witness, *and* the admission of said matters so offered to be proven"—*as a whole*—not singly or severally, an essential part of this single objection offered to *Ernest* Grunthal's testimony is that the plaintiff *Isadore* Grunthal was permitted to read in evidence the writ of attachment.

So, there is no foundation for the 6th assignment of error. The record of the bill of exceptions fails to show the making, *or* refusing, of "the defendant's motion to strike the testimony given for the plaintiff as to the trespass complained of;" whereas the due making, by the defendant below, of *that* motion, and *the* refusal *thereof* by the court, are both *indispensable* to support this assignment of error.

The eighth assignment of error as framed is without support in the record, the proffered testimony was offered as a whole; and the testimony so proffered in its entirety is set out on pages 56 and 57 of the transcript, in the bill of exceptions;—whereas the error assigned is directed *not* to the ruling of the court that was in fact made, rejecting the proffer as an entirety, but is addressed to an alleged distinct ruling of the court on separate portions of this proffer, or a combination of certain separate portions of this proffer, which ruling the record shows the court *never* made.

The ninth assignment of error, as framed, is without support in the record. And this is made evident by considering the *single* proffer of evidence that was made and the *single* ruling of the court on this single proffer, pp. 56-57 of record. Indeed, the 8th and 9th *several* assignments of error are alike predicated of a *single* and the *same* ruling, upon a *single* and the *same* proffer of evidence as an *entirety*: There are in the record no *several* rulings on this proffer of evidence as an entirety. The rule is, that an

integral proffer of evidence, (embracing distinct matters, upon which in its entirety the action of the court is invoked by a single motion) being made, and in response to which proffer there is a single ruling rejecting *such* proffer, such ruling may be assigned as error as a single ruling upon *such proffer,* in its entirety, and *not* otherwise; no such ruling is assigned for error here.

This court may not, over the presumptions which sustain the rulings of the Circuit Court, entertain an assignment imputing error for the rejection of evidence, when the record shows there was no separate, distinct, ruling rejecting *such* evidence,—but simply a single ruling upon a single proffer, and nothing more, rejecting as a whole, the entire matter so proffered in evidence; the Circuit Court is not authorized, required, or justified in *reframing* the proffer, so as to separate the admissible from the inadmissible, and *then* rule upon the proffer as thus reframed.

So, there is no basis, in the record, upon which the assignment of error No. 11 may be predicated.

There was no separate offer to prove, nor a separate ruling of the court on such offer, that "the said property was sold under an order of the clerk," etc., as set up in said assignment of error.

There is no basis in the record for the 12th assignment of error.

There was no separate offer to prove, nor a separate ruling of the court on such offer, "that plaintiff never requested a return of said property," etc., as set up in said assignment.

---

There is no basis in the record for the 13th assignment of error.

There was no separate offer to prove, nor a separate ruling of the court on such offer, the condition of the property when defendant's writ was dissolved.

---

As to the several matters of error, assigned upon the

oral charge given by the court of its own motion: It will be observed that these alleged errors are, *in terms,* predicated of an *oral* charge, which as before claimed has no legitimate place in the record proper. This charge is reproduced in the bill of exceptions, transcribed on pp. 109 to 112 inclusive of transcript, as a *single* charge to which said charges the defendant excepted. There is then no basis in the record for the alleged error, assigned here as the 14th assignment. The matter specifically assigned as error, that—"In this case upon the undisputed facts the jury will have to bring in a verdict in favor of the plaintiff; that is that you should find the defendant guilty of the trespass alleged in the declaration," was laid down as a part of the court's oral charge given of its own motion; and was *not* specifically excepted to; nor was it excepted to, at all, *otherwise* than a connected part of a general charge, occupying pp. 109, 110, 111, 112 of transcript.

The single exception to the charges is a general exception, and is as follows: "To the giving of which said charge the defendant excepted." This general exception applied to the whole charge; and the *single* error *capable* of being assigned upon this exception, if any may, under the rules as now framed, is that the whole charge is erroneous; no such error has been assigned.

There is no basis in the record for the assignment, designated as the 15th. There was no *specific* exception to the instruction therein assigned as error. Nor was it excepted to, nor was it given at all, *otherwise* than as a connected part of the general oral charge. There was but a single exception, a general exception, and it is as follows: "To the giving of which said charge, the defendant excepted," p. 112 of record.

There is no basis in the record, for the assignment of error designated as the 16th. There was no specific exception to the instructions therein assigned as error. Nor was

it excepted to, nor was it given, otherwise than a connected part of a general charge. There was but a single exception —a general exception—and it is the identical single exception, and none other, upon which the 14th and 15th assignments of error are severally based, and is as follows:

"To the giving of which said charges, the defendant excepted," p. 112 of record.

---

The 17th assignment of error is as follows:

"The court erred in making its charge to the jury in refusing to state the propositions to the jury requested by the defendant and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12."

There is no basis in the record for this assignment.

The court was not requested, in making its charge to the jury, alleged in the assignment to have been orally made, to state the propositions to the jury, set up in this assignment. And not having been requested to interject these propositions, or either of them, *in* the charge so made of its own motion to the jury, did not refuse to *so* interject; nor did the plaintiff in error make or reserve any exception to such phantom refusal.

On the other hand, as shown by the record, p. 113, and as required by the orderly course of procedure, *after* the court had *so* made *its* charge to the jury. "*Thereupon* the defendant requested the court to give the following charge to the jury:" Here follows a charge, in writing requested, and refused by the court, and a statement of facts, or facts which the testimony tended to prove, as the basis of said requested charge. Then follows in succession *other* requests to charge, each predicated upon the *precise* statement of facts, or facts which the testimony tended to prove, as the basis of such requested charge, and none *other* facts than such as were made the basis of the original request to charge, pp. 113, 130 inclusive, of record.

It will be observed that the 17th assignment of error, with the other assignments of error, was filed in the office

Engelke & F. Milling Co. v. Grunthal.—Brief for Defendant.

of the clerk of the Circuit Court, as errors intended to be relied on, as required by Special Rule 2. And with these assignments of error was filed also, as required by said rule, a written direction to the clerk indicating the papers and proceedings that are to be incorporated in the transcript. Special Rule 3 requires, see note p. 23 of Rules, that after incorporating in the transcript the judgment upon the verdict, the clerk is required to insert "all charges that may have been *given* to the jury in *writing*." But, in the written directions, the clerk is required not only to insert "all charges *in writing*" so *given* to the jury; he is *also* required to do what he is not permitted to do under the rules, that is to insert *all* charges requested by defendant and refused by the court; p. 288 of transcript, and he violated the rules in obeying this requirement. It is clear, therefore, that the instruction so *given* orally by the court; of its own motion —and none other was *given,* and all the charges requested by the defendant and refused by the court, if there be *such* properly in the record, as a legitimate basis for the assignment of errors, can be found not *elsewhere* than in a bill of exceptions. If found elsewhere they cannot be regarded by the court.

---

The requirement, that a copy of the assignment of errors relied on shall be served, with notice of the time for settling the bill of exceptions, is to enable the defendant in error to act advisedly, in the light of these assignments, as to his participation in the makeup of the bill of exceptions. *U. S. v. Tidball,* 28 Pac., 385. The defendant in error was not advised that any error, growing out of the charges of the court requested by the plaintiff in error and refused by the court, was to be assigned in this court *other* than this single assignment No. 17, and *just as it is framed.*

Suppose that this assignment of error, the 17th had designated either of the charges transcribed in the bill of exceptions contained in transcript, pp. 113 to 130 inclusive, as matter upon which error is assigned here, whether such

designation be accomplished by setting forth the said charge *in* the assignment, or by *otherwise* identifying it, is it not obvious from the records, introduced or sought to be introduced by the defendants, copied in the bill of exceptions, that the alleged holding by the sheriff of the property attached under alleged *other* and *junior* writs of attachment, was *equally* a holding under alleged attachments that were dissolved and dismissed by the court? Can this court know that the court below did not refuse to state the propositions, the non-stating of which is made the basis of such assignment, upon the *specific* ground, that the alleged other writs of attachment, under the *authority* of which the seizure of said goods was thus hypothesized as having been prolonged, were equally without warrant of law, and had *also* and equally been dissolved. *J. S. R. Co. v. Watson,* 28 So. Rep. 57.

Is it not also clear, if the plaintiff here had *in fact* requested the court below, whether in *the making* of its oral charge, or theretofore or thereafter, "to state the propositions to the jury requested by the defendant and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12"—and these propositions had in fact been sufficiently *identified* as a basis of error to this court; — and the court below had in fact refused such *single* request;—that *all* the evidence bearing on the propriety of all the propositions embraced in such *single* request, would be required to be inserted, in connection with such refusal, in the bill of exception, to enable this court even to *entertain* an assignment of error based on *such* single refusal.

If we were to concede that an assignment of error, "that the court erred in refusing to give *several* instructions and *each* of them" has a sufficient predicate in the bill of exceptions, as held in *Hathway v. State Ins. Co.,* 64 Iowa, 229; S. C. 16 N. W., 164 —it would *not* help the plaintiff in error in this case. It was held, however, in *Wicke v. Iowa State Ins. Co.,* 57 N. W. 632, S. C. 90 Iowa, 4—that the correctness of instructions is *not* legally challenged by an

assignment directed to instructions by number only.—2 En. Pl. & Pr., 950.

In *Hiatt v. Kingshead,* 58 N. W. 700 S. C. 40 Nebraska, 178, the court says: "In principle, there can be no difference whether errors as to instructions are assigned in gross or to the same instructions numbered one, two, three, etc., from first to last."

The theory of the rules prescribing the make-up of a bill of exceptions proceeds upon two propositions, the toleration by this court of a departure from either of which would necessarily be fatal to the usefulness, if not the integrity, of these rules:

1.  An assignment of error, made by the rules to serve as a guide for the framing of a bill of exceptions, based on the refusal of a request to charge, must be *specific* and embrace but a *single* proposition.

2.  The bill of exceptions must exhibit, in connection with such *specific* request to charge and the refusal thereof, so much of the testimony as bears on the propriety of the refusal to grant such *specific* request, when, and *only* when, such refusal is assailed by *such* specific assignment of error.

If therefore, it be conceded that, before the prevailing rules were adopted, a general assignment of error challenging specified instructions by number would be well taken if *each* and *every* the instructions were erroneous,—such an *assignment* can not be entertained *now,* in this case, seeing that no predicate of fact, *framed under the rules,* has been exhibited in the bill of exceptions, in connection with the request and refusal of specified instructions, thus assailed on error by such *general* assignment.

If, however, it be *further* conceded, that the refusal of a single request to charge stated propositions may be challenged by an exception duly sealed to such refusal *and* assigned for error in this court, it can *not* be done otherwise, under the rules as framed, than by exhibiting in the bill of exceptions such *single* request to charge *the stated* propo-

sitions, and also *all* the evidence bearing on the propriety of *such* refusal.

In the light of this assignment of error, the defendant, as plaintiff below was concerned, as to the incorporation in the bill of exceptions so to be settled, of so much of the facts proven, or as the evidence tended to prove, as was recited therein, only *so far* as the facts recited bear upon the *specified* assignment of error, in that behalf, as it was in fact *framed*. Counsel for the defendant in error, it must be assumed, knew that the court did *not* err, could not as matter of law err, *in refusing to state, in making, a charge to the jury* made of its own motion, the many propositions the nonstating of which *in* the *charge* so made of its own motion to the jury, the plaintiff in error assigns as error, in this 17th assignment. And the counsel for the defendant in error, thus advised by this 17th assingnment of error, of what was to be *insisted* upon as error, growing out of the charges so alleged to have been refused, was indifferent as what was recited in the bill by way of facts proven, or facts the evidence trended to prove, in support of an assignment of error, which in its nature could find no support in *any* facts or possible trend of facts.

But suppose this *phantom* request of the court embodied in the 17th assignment of error, and this *phantom* refusal, *in making* its charge to the jury, "to state the propositions to the jury requested by the defendant, and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12," had been a *real* request, and a *real* refusal, and a *real* exception had been reserved to *such* refusal, where is the record evidence thereof?

Certainly this court is not permitted to look to the record *proper* for it. The record proper is no place for such proceedings. The evidence which certifies such a refusal *and* the exception, if any, reserved by defendant thereto, to this court *must* be found, if it exists, in the ordinary bill of exceptions.

Special Rule 3, as to "Transcripts of Records," provides in note, p. 23, in reference to the charge given by the court,

whether at the request of plaintiff or of its own motion, "Here insert the charge in full that is excepted to with its proper number." And then: "To the giving of which said charge, the defendant excepted." Then:

"The said charge was predicated upon the following state of facts, or facts that the testimony tended to prove."

But no *such* predicate, or any predicate, follows the charge so given by the court, of its own motion, in this case.

Recurring now to the point, immediately in hand, then follows, p. 23 of rules:

"Thereupon the defendant requested the court to give the following charge to the jury:

"Here give the charge in full with its *proper* number."

This court must look in vain through the ordinary bill of exceptions to identify by its number a *single* charge, requested by the plaintiff in error. Indeed, the bill of exceptions does not disclose the number of *any* charge asked for by plaintiff in error, nor can this court ascertain otherwise than by counting them how *many* charges were re-requested by plaintiff in error; nor can it ascertain, otherwise than by conjecture, or inference from the order in which they are successively transcribed, what *was* the order, in which these requests were moved for. Nor can this court derive any assistance in *identifying* the subject matter, made the basis of the 17th assignment of error: "The court erred in making its charge to the jury in refusing to state the propositions to the jury requested by defendant and numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12," by reference to the alleged predicate of facts, upon which the error sought to be assigned is based.

And, again, where is the predicate of facts, following such alleged refusal; and upon which the court below is sought to be held in error?

The departure from the rules in this regard, and the obvious policy enforced therein, and the confusion and perplexity thereby resulting, are made the more hurtful, in

that the charges requested are *not* identified in the bill of exceptions by number, and are based upon *identically* the same facts, in *identically* the same language,—pp. 113 and 130 of transcript.

The 17th assignment should therefore be stricken. It assails as a ruling, an *alleged* refusal to charge, which refusal the bill of exceptions does *not* show the court made, which alleged refusal to charges is based upon an *alleged* request to charge, it is *not* shown, therein, the defendant made; and in reference to which alleged refusal to charge, the bill of exceptions does not show the defendant reserved an exception.

But, suppose, there was before this court, an assignment of error, identifying, for illustration, the specific request to charge found on pp. 113-114 of transcript.

That request, as therein set up, hypothesizes, among other facts, as its supposed predicate, the dissolution of the attachments, junior to that of the plaintiff in error brought by third persons, and the supposed injury inflicted by others by force of said junior dissolved attachments; and yet in the evidence produced in connection with such request and refusal to charge, not the slightest adminicle of proof is introduced to show that such junior attachments were issued, levied or dissolved.

And it is true of each of the requests to charge;—the bill of exceptions does not show that testimony was adduced in the case tending to establish the *particular* state of facts so hypothesized in the charge. There are facts hypothesized in *each* request, in respect of which, as shown by the predicate, there was *no* evidence even tending to establish them. And so it is, to *entertain* the assignment of error based on the alleged refusal to state certain numbered propositions, on this record, is for this court to be diverted from its pressing official duties to the discussion of *moot* questions.

The motion to strike the assignment of error, No. the 18th, and the motion to strike the evidentiary bill of ex-

ceptions, may be presented together, seeing that an eviden-
tiary bill of exceptions can *not,* in this case, be considered
by the Supreme Court *otherwise* than in connection with
an assignment of error, if any, properly predicated on the
refusal of the circuit court to grant a new trial, moved
for, on the ground that the verdict was contrary to, or not
supported by, the evidence.

The recital in the evidentiary bill that it "was made up
and settled at the instance of the plaintiff in error in support
of an assignment of error predicated on the refusal of the
court to grant a new trial 'on the ground that the verdict
was contrary to the evidence or not supported thereby"
is no evidence to this court that the circuit court refused,
upon *timely* or *other* application, in writing or what not,
of the plaintiff in error, to grant it a new trail;—nor that
such application was made on one ground or another. *Lov-
ett v. State,* 29 Fla., text 383 ; nor that such refusal was ex-
cepted to, *Monnier v. Mizner,* 17 Mich. 271-3.

It may be conceded that the signing of such evidentiary
bill creates a moral evidence more or less satisfactory that
the plaintiff in error, upon whose insistance such a bill was
made up and settled, *had filed* with the circuit clerk an
assignment of error, predicated on the alleged refusal of the
circuit court to grant it a new trial on the ground specified
in the assignment as filed. The plaintiff in error *could* file
whatever assignment of error he chose, predicated on what-
ever ground he chose to predicate it of.

But this court can not look to the recital as a *record,*
upon which it may act, as to the application, if any, the plain-
tiff in error *may* have made to the court for a new trial ; nor
as to the *time* when such application was made ; nor *how*
it was made ; nor the grounds thereof, if any ; nor the *ruling,*
if any, of the court thereon, nor the exception, if any thereto ;
nor can this court look *elsewhere* for such matters *than*
to the ordinary bill of exceptions, in *which,* according to the
course of the common law, and its own rules enforcing
common law principles, special Rule 2, p. 23, a *motion* for

a new trial, and the time when it was made and submitted, and the grounds thereof; and when it was heard, and the evidence, if any, introduced for and against the same, and the action of the court thereon, and the exception, if any, of the movant thereto, *must be preserved,* if at all, to the judicial action of this court. Revised Statutes, section 1265; *Grady v. Jeffries,* 25 Fla., 743.

In Vol. 8 Notes U. S. Rep., pp. 893, 894, the principles of law supporting our contentions, as followed by *all* the courts, are illustrated and enforced.

The motion having been by this court, on the 14th of November, 1900, "continued until the final hearing of the case," the defendant in error, now subject to the said motion, submits, as follows:

### For Defendant in Error.

Its statements of the facts set forth in the brief of plaintiff in error, suffices to show that *the* case it seeks to make on its writ of error sued out without a supersedeas bond, is not a *real* but only a *plausible* case.

It sought therein to give a *color* of justification for the writ, in the assertion, wholly unsupported by the record, absolutely contradicted by the record, "That defendant first attacked the service, but the motion to quash was overruled" (p. 1 of plaintiff's brief.)

It must have been known to this plaintiff in error that the *service* of the summons upon it never was attacked; that no motion to set aside the service was ever made; that the *only* motion that was made, the *only* motion that was denied, was a motion to quash the writ (p. 5 of record). The summons so moved to be quashed is transcribed on p. 1 of record; and it is not *even* claimed there is an infirmity of *any* kind, quashal-compelling or what not, *therein.*

It may be that, after the defendant specially appeared to move to quash this summons, and even after the argument thereof and denial of this motion, the defendant *limiting* his appearance to the making of a motion to set aside the

service, *might* have moved the court, even *then,* to set aside
the service or return upon that summons, thereby conceded
to be a valid summons. But the exigencies of this case do
not require this court to adjudicate that question. In point
of fact, no such appearance so limited to a motion to set
aside the service, was filed;—no such motion was in fact
made; no *such motion* was acted on by the court below; and
of course no exception was made to such phantom action.
This court can not impute error to the court below, in that
it did not, *mero motu,* set aside a service, the defendant,
thus represented by attorneys who presumably knew what
defendant wished in that regard, did *not ask* it to set aside.
Nor can any question of the jurisdiction of the court below
over the defendant, thus specially appearing to quash the
summons be made here,—seeing that, on the denial of the
particular motion that was *in fact* made and denied, (and
which motion so made the court was bound to deny as being
ill-taken) the defendant appeared and pleaded to the action.

As there was no motion to set aside the service, and no
denial of such a motion, there could be and was no exception
to such a denial. The exception, the *only* exception reserved
for the judgment of this court was an exception to the denial
of the motion to quash *the summons,* p. 37 of record. No
*other* exception could *possibly* have been placed before this
court for review; and error upon *that* exception has not
*even* been assigned.

Had a motion been *duly* filed by the defendant, that is
*before* it pleaded to the action, to set aside the *service* of
the summons, on the ground, discussed in plaintiff's brief,—
the supposed *difference,* between the return that the sheriff
"delivered a true copy thereof, to Gibbons *as* the resident
*business agent* of the corporation," and the return "it was
delivered to Gibbons, the *business agent* of the corpo-
ration,"—to which supposed difference attention is called
here for the *first* time, as being offensive to the acute phil-
ological or syntactical sense of propriety of this foreign cor-
poration;—the sheriff would have then and there amended

his return; indeed, if such grave consequences had been ad-
judged to result from the supposed violation of philological
or syntactical accuracy involved in the return that was made,
the sheriff in view of the affidavits as to Gibbons' relation at
the time of service to this corporation, would have been
*required* by the court, then and there, to recast his *English*.

The authorities cited by plaintiff in error, p. 3 of the
brief, must have satisfied *it,* that the *only* way to set aside
a *sheriff's* return is by a *"direct* proceedings," as by motion,
to set *it* aside;—and that a *sheriff's* return should *not* be
set aside upon a motion attacking the *writ* issued by the
*clerk.* The law does not prescribe that a sheriff must be
a "lingual artist" and when *his* return is *directly* attacked,—
the *presumption* is, that "sworn public officers discharge
their duties in the manner *prescribed by law."* *Fears v.*
*Thompson,* 82 Ala., 294; S. C. 2 S. Rep., 719-20; 18 A. &
E. Enc. Pl. & Pr., 965.

As to the 2nd assignment; the contention is, as set
forth on p. 4 of plaintiff's brief, that the second plea, "fol-
lowing its plea of not guilty," was a good plea.

Is it not obvious that if this 2nd plea be, in substance
and in fact, as urged in this brief, a plea that it in fact com-
mitted no trespass as claimed in the declaration, it was ill
pleaded, following as it did the plea of "not guilty," there-
tofore pleaded, which fully covered it?

An analysis of this 2d plea shows, however, it sets up
*no* defence—and is obnoxious to the demurrer interposed
to it, 9, 10, 11 of record. It alleges *affirmatively* indeed that
the property, alleged in the declaration to have been seized
and carried away by the defendant, was taken into custody
by the sheriff of Duval county, Florida, in a suit wherein
the Merchants National Bank of Jacksonville, a corporation,
etc., "was plaintiff and Isadore Grunthal," etc., was defend-
ant. It is *not* alleged, however, that this seizing by the sheriff
was *the* trespass complained of in the declaration. And if
the plea had stopped here, it would not have presented even

a colorable defense; but it proceeds; "and *there never was* any taking and seizing of the said property in the said declaration stated, other than by the said sheriff, under and by virtue of the writ of attachment aforesaid, *and other writs of attachment.*"

If the facts herein set up constitute an issuable traverse of the material allegations of the declaration they were admissible under, and whatever of defense they presented, had been fully covered by the first plea of not guilty.

If the facts therein set up be pleaded not as such a traverse, but as a justification for the trespass complained of, under a writ of other authority, the plea should have set out the writ or other authority, substantially and particularly —a general allegation is not sufficient. *Pierce v. Hill,* 9 Port. (Ala.), 152.

In this plea, the corporation maladroitly sought under the averment, " and other writs of attachment," to elude the force of the fact,—made apparent in the record evidence of the recorded proceedings it has brought here,—that this *"other writ,"* under which the goods of defendant in error were seized and carried away, was *its* writ; and that such writ had been dissolved for irregularity in its issuance; and had, *thus dissolved,* become as to it "as though *no process* had ever issued, and the property attached had been taken and detained by its order *without any process."* Drake on Attachment (7 Ed.), sec. 185 "b."

As to the third assignment:

This is: "The court erred in making the order refusing and denying the defendants application to file the additional pleas requested and tendered May 2d, 1900, *and in refusing to allow the defendant to plead the matters set forth in said proposed pleas."*

The application to file these additional pleas is recited on p. 37 of record, and the proposed pleas follow this application. The order of the court denying it is found on p. 41 of record, and is as follows: "Upon consideration of

said application by the court, the same was denied, to which ruling the defendant then and there excepted."

The ruling upon this *single* application was a *single* ruling, and the exception to this ruling was a single exception; and the assignment of error, thereon, must be a *single* assignment.

The last, the italicised, subdivision of this single assignment has nothing in this record to rest upon. The court can not entertain it, and as it is an integral part of a single assignment, the assignment itself must be disallowed.

In the brief of plaintiff in error, this single assignment is discussed precisely as if the defendant below had made several and distinct applications to file three several pleas, and precisely as if distinct rulings had been made on these several applications, and a distinct exception had been reserved to each ruling.

In *Eggart v. The State,* 40 Fla. 541-2, this court held "that an assignment of error made to embrace allegations of error in the giving or refusal to give more than one instruction asserting distinct propositions is entirely insufficient." And, further, that this court will go no further in the consideration of this single assignment than to ascertain that at least one of the distinct propositions embodied therein was correctly refused. This doctrine was applied to a criminal case, a case not embraced in the restrictive rules prescribing a form for bills of exceptions in civil cases. Obviously, the policy which dictated these rules was to relieve this court from the necessity of considering *other* than *specific* rulings, on *specific* exceptions thereto, and then, *only* when presented to this court by a *specific* assignment of error.

The principle pervading these rules is, that in determining whether an assignment of error is well taken, it must be considered just as, and not *otherwise* than just as, it is made; this court is not required to distribute it, nor entertain it distributively.

The court below was not charged with the duty of formulating defendant's pleas; nor defendant's application for leave to file pleas. Its full duty is discharged, when judicially invoked to do so, it passes upon pleas *just* as these are formulated, and upon an application to file these *just* as *it* is formulated. It can not abdicate the impartial performance of these high judicial functions to become a kindergarten, wherein suitors are taught the principles of pleading. "It is the business of *parties litigant* to frame their pleadings properly." *Hood v. Preach,* 37 Fla. 132.

We are advised, in plaintiff's brief, discussing this *single* assignment, designated as the third assignment, as follows:—"The 3d was good *in bar.* The 1st and 2d were good in *any event* in confession and avoidance. The 1st and 2d pleas were sufficient and proper *at least to require replication to let in proof of mitigation."*—P. 5 of brief.

We had supposed that a plea to the *action,* whether in traverse, or in confession and avoidance, and *equally* so, was a plea in *bar.* Indeed, we had cherished the delusion that matter in mitigation of damages *should* be given in evidence under the general issue, as by that plea the defendant puts upon the plaintiff not only the *proof* of his injury but also the proof of its *extent.*

We shall not abandon this delusion, except in cases where a foreign corporation wants some *color* of pretext to break into the Supreme Court on a writ of error to a judgment without superseding it.

---

Finding it impossible to impute error to the court below, in denying the application that was made to file these pleas, the plaintiff in error, proceeds, p. 6, of its brief, as follows:

*"In support of these pleas,* we argue in support of the 8th and 9th assignments of error," and the argument that follows seeks to show the *competency* of certain evidence, under the issue of fact formed under the plea of "not guilty."

As to the 8th and 9th assignment of error, p. 28 of record.

There is no basis in the record upon which either of these assignments of error may be entertained by this court.

The proffer of testimony was made, in each case, as a *single* proffer, and not *otherwise* than as a single proffer, p. 56-57 of record;—and the 8th and 9th assignments of error are predicated of a *single* and the *same* ruling. These assignments, as made, as shown in the discussion of the motion to strike, can not be entertained.

The case cited by plaintiff in error, p. 7 of its brief, *Evans v. Virgin,* 7 Amer. Rep. 870, formulates the principles the court below, in his instructions to the jury, p. 112 of record, applied to *this* case. It is not denied, that the dissolved writ of attachment, proceeding as it did from a course of competent jurisdiction, was a protection *"to the officer."* Its protection did *not* extend to the plaintiff in error, who sued out that writ.

There is not the *slightest* support in that case for the italicised portion of the statement, in plaintiff's brief p. 8 that "The court held that said proceeds, so in the hands of the sheriff, were legally liable to be taken on the execution as they were, *and that payment thereof by the sheriff to the plaintiff in execution was a full compliance on his part with the order to deliver the firm property to the defendant, and was a complete discharge thereof."*

The *sheriff* was indeed discharged from liability growing out of a seizure under a writ directed to him, *valid* on its face; and *he* was *also* discharged, in respect of the proceeds of the sale of the attached property thus legally sold, when he applied them to an execution in his hands to which these proceeds thus in his hands, were liable.

But that opinion can not be so tortured as to make it sanction, in the *remotest* degree, the discharge, because of such application, of *the plaintiff,* who sued out the attachment, from *his* responsibility for *irregularly* suing out the attachment. The rule, from which there is no departure,

is that process issuing *irregularly* from a court of competent jurisdiction to a proper officer will justify *such officer* in acting under it until it is vacated, but that such process *when vacated* is no justification to the party who procured it to be. issued. *The moment* it is set aside, he stands as though no process had ever been issued and becomes a trespasser ab initio. *Cordington v. Lloyd*, 8 Adol. & E., 449; *King v. Harrison*, 15 East 612; *Parsons v. Lloyd*, 2 W. Bl. 845; *Grant v. Baggey*, 3 East 128; *Chapman v. Dyett*, 11 Wend. 31; *Kerr v. Mount*, 28 N. Y. 659; *Hayden v. Shedd*, 11 Mass. 501.

The case cited by plaintiff, *Byersdoff v. Sump*, 12 Am. St. Rep., 678, has reference to a writ regularly but maliciously sued out. Undoubtedly, if a party adopts and pursues the due forms of law but falls into an error of fact, as for instance, the existence of a ground for an attachment, this is *not* a defect in the proceedings resulting from a failure to observe the law, which every one is presumed to know. It is *not* an irregularity on the face of the proceedings. It is not a mistake of the *law*, which is never permitted to constitute a defence. Indeed, the case of *Byersdoff v. Sump* follows a line of authorities, in respect of which it may be affirmed that not a case can be found in which an action of *"tort"* has been successfully maintained against the creditor, for prosecuting a suit against his debtor, in which he strictly pursued *all* the forms and requirements of law, *unless* it *appeared* he was actuated by malice. But on the *other* hand, no case can be found by plaintiff in error, certainly none *has* been, in which has been successfully assailed, the doctrine, laid down in Drake on Attachments, sec. 185 b: "Though a writ issued by competent authority and regular on its face, will afford protection to an officer acting under it, it does not, if issued irregularly, afford the same protection to the party who caused it to issue. The responsibility rests upon him, not only to see that it is right in those particulars, but that it was regularly issued; for if it be set aside for irregularity, that makes the party a trespasser ab initio,

and affords him no protection as to what has been done under it. As to him it is then as though no process had been issued, and the property attached had been taken and detained by his order without any process."

That plaintiff in error was aware of this principle, and its *just* application, measuring the consequences to it, flowing from *its* dissolved writ of attachment,, is made apparent in that it cites as *its* authority, p. 9 of its brief, Drake on Attachment, sec. 185 c, in which it is announced, "when an attachment fails because the writ was issued without jurisdiction, or irregularly, and, the attaching plaintiff is sued in trespass for seizing property thereunder, he cannot set up as a defense that he returned the property to the defendant *unless the latter accepted it.* But he can show in mitigation of damages that afterwards the property was sold under a valid execution against the attachment defendant and the proceeds were applied to the payment of his debts." And this reasoning proceeds upon the proposition that these proceeds "are not applied by the act of the tort feasor but by the act and operation of law." "And as a matter of right and justice, the plaintiff is entitled to so much *less damage* as compensation for his injury."

That is *exactly* what the plaintiff below got; and *exactly* what this corporation complaining of error here was condemned to pay. And yet though thus in *entire* agreement with the victim of its wrongdoing as to the *precise* nature of the wrong done, and as to the nature and extent of the mitigation which reduced the recovery against it, it is here vexing its victim in a writ of error, sued out without bond.

In plaintiff's brief, the 4th, 5th and 6th assignments of error are discussed, as grouped. There is no foundation in the record for either of these assignments, as hereinbefore shown. These assignments should be disallowed; they can be sustained here only upon the postulate, that this court may for the defendant below recast *here* the proffered testimony that was in fact made to the court below, and then, to ascertain here what that court *ought* to have done in

reference to such recasted proffer; and then, to assume it would *not* have done, in that behalf, what it *ought to have done;*—and to reverse it on that assumption.

Objections to evidence must not be general and indefinite, but party excepting to evidence must point out part objected to; and if exceptions cover any admissible evidence, it is properly overruled.

*U. S. v. McMasters,* 4 Wall 680-682; *Nornau v. Caledonia,* 121 U. S. 400; *McKeown v. Powers,* 86 Maine 295, S. C. 29 Atl. 1080; *Charleston Ice Co. v. Joyce,* 54 Fed. 333.

A flagrant misconception of the law as well of the evidence pervades the brief of the plaintiff on these assignments, thus grouped.

The declaration was not based on the claim that defendant had made a malicious or wrongful use of regular proceedings; it in no way claimed damages for the malicious or *wrongful* suing out of an attachment. The doctrine applicable to a suit of *that* character is properly set forth in the case in 36 Iowa, 262, and the case in 17 Mass., 180, cited in plaintiff's brief. The case of *Hayden v. Shed,* 11 Mass., 501, does not hold that *"case,"* and not *"trespass,"* is the proper remedy for one whose goods have been attached upon a writ, subsequently abated because another suit for the same cause of action was pending; but the *distinction* enforced in *that* case, and all other cases, was too obvious to be overlooked by plaintiff in error. It was because the writ of attachment was *regular on the face of the proceedings,* and was only abated for matter *aliunde* that writ,—that it was adjudged *not* so abated as to make the plaintiff therein a trespasser *"ab initio."* The plaintiff had not been defeated by a mistake of law, apparent upon the face of the proceedings. As to *these* proceedings, the plaintiff having legally pursued his remedy in a court of competent jurisdiction, by lawful methods employed therein, was upset by a fact introduced into *that* record by his adversary, that is the pendency of another suit for the identical cause of action. And the law does not permit a plaintiff *so*

pursuing a legal remedy, by proceedings regular of their face, and so defeated by a fact so pleaded by his adversary, to be mulcted in damages other than the statutory costs therein, *unless* it is made to appear that such regular pursuit of legal remedies was *malicious.*

The case of *Lindsay v. Larned,* also cited by the plaintiff, and which case reviewed *Hayden v. Shed,* must have *fully* apprised the plaintiff in error of the distinction herein pointed out, that not *"trespass"* but "case" *only* can be maintained against one who had acted in virtue of *lawful* process, which was subsequently abated; and further, that the *only* defense, as this corporation was *fully* aware, it had to this action, was to establish that the process, under which it seized the goods of the defendant in error, the writ thus dissolved for *irregularities apparent* on its face, was *such* process as protected it from the status of a trespasser "ab initio."

After citing many cases, showing what is required to establish a *wrongful* or malicious attachment, with the opinions in which we thoroughly agree, but which have not the remotest application to *this* case, the plaintiff in error says: p. 19 of its brief,—"It follows that testimony tending to show a wrongful attachment was not competent or relevant to the case made by the declaration." As the case made by the declaration was *not* for a wrongful attachment, but for a naked *trespass,* committed by the defendant; and the fact of such trespass was proposed to be established, in a seizure under a writ of attachment, which had been *so* sued out by the plaintiff therein, *after* it was dissolved for irregularities on its face, *as* to make it a trespasser ab initio; that such attachment was as to it no attachment *at all,* malicious, wrongful or what not; and because it was *no* attachment, the plaintiff was *thereby* exposed as a naked trespasser to all the consequences which the law annexes to a trespass;—the testimony introduced was not only relevant and pertinent, it was *conclusive* that the plaintiff therein was a trespasser. If the attachment thus dissolved

for irregularities apparent on the face of the proceedings had been *improperly* dissolved, even *then,* the *only* possible relief from the consequences of such dissolution was through its appeal *therefrom,* to this court to correct it. If that dissolution be wrong, it stands, uncorrected and unappealed from, as the final judgment of the court, charged with the duty of pronouncing judgment on such apparent irregularities, and is beyond the corrective power of this court, in *this* case.

And, then, the plaintiff in error seriously announces a proposition, whose delicate humor, half concealed in the drapery of legal terminology, must challenge the gravity of this court: "That *even if* the form of the action had been *case* instead of trespass, it would have been necessary to aver and prove malice." Mrs. Partington's conclusion; "she *knew* her boys never drank at night because they were always *so* thirsty in the morning"—is equally coherent.

The 7th assignment of error is as follows (p. 283 of record): "The court erred in refusing to allow the defendant to read in evidence the affidavit filed December 18, 1895, in the case of *Engelke & Feiner Milling Company v. I. & H. Grunthal* for *an* attachment; *also* the bond made at that time upon which said writ of attachment was based."

The basis in the record for this assignment of error, is found on p. 53 of record, in the proffer of evidence made by plaintiff below, as follows: "And the defendant to maintain the issues on its behalf," that is the issue raised on the plea of not guilty, produced from the original files and records of this court, and offered in evidence the affidavit filed December 18, 1895, in the case of *Engelke & Feiner Milling Company against I. & H. Grunthal* for attachment, also the bond that was made at that time as follows:" Here follow the affidavit and bond.

And plaintiff's argument here is that these documentary evidences *as proffered* were admissible, as testimony for it, "after it had developed that the trespass complained of consisted in seizing and taking the property under the writ of

attachment by the sheriff, because they *tended* to show the plaintiff in error here *pursued the steps required by the statute in relation to attachments;* that the grounds for the attachment were set forth in the affidavit, that the *bond required* was given, that the plaintiff in attachment acted in good faith and *had proceeded according to law,* and the presumption of malice would thereby be overcome, if such presumption arose."

*Exactly,* what the court, whose judgment stands, in *that* case, decided the plaintiff in error had *not* done ! ! It then proceeds: "It was competent for the defendant to *follow this* with proof that it had good cause to believe the grounds stated in the affidavit were true and that the attachment writ was not sued out and levied wantonly or oppressively." And, then, "This is really an action for wrongfully suing out an attachment and not simply trespass." And then proceeds to cite authorities to show that in *such* an action "the plaintiff must show that the defendant had not good cause for believing the facts to be true upon which it based its affidavit for the writ;" and that malice is indispensable to support such action, pp. 10 and 11 of this brief. Is this a mere misconception of the nature of this action, and of the issue formed by the plea of not guilty *thereto,* or is it an effort to *so* shift this issue *as* to impart a *color* of plausible pretext for this writ of error?

Accepting each and every the authorities cited in plaintiff's argument on this assignment as sound law, they furnish no support for plaintiff's contention.

The 10th assignment is as follows:—"The court erred in refusing to permit the defendant to read in evidence to the jury the said affidavit, bond, writ of attachment and return of the sheriff thereon, motion to dissolve, demurrer and order of dissolution in each of said cases of the Merchants National Bank against the plaintiff and the *same* papers in another and a third case against plaintiff."

The *proffer* made by the defendant below is found at the bottom of page 58, and the documentary evidence so·

proffered *as a whole* is contained in pp. 59 to 102 inclusive; and the action of the court on the proffer on p. 102.

It will be observed that this *single* proffer embraced much documentary evidence, some that is not even contained in the documents *produced,* and some that is not covered by this single assignment of error; among other matters it sought to introduce under *this* proffer the record of the judgment of the court on the motion to quash entered in the case of *"Engelke & Feiner Milling Company v. Isadore Grunthal,"* etc., p. 101 of record; the assignment of error is, therefore, ill-taken, unless the *entire* proffer was admissible; whereas the assignment does not even claim that the proffer as an entirety was admissible, but only that specified portions thereof, upon which, *as so segregated,* the court below did *not* pass, were admissible.

But relax this principle, to such an extent as will justify this court in ascertaining whether the *specified* portions of the documentary evidence, set up in the assignment, rejected by the court,—and· upon which rejection, as a whole, error is assigned,—were properly rejected;—the question arises was the record of the first attachment sued out by the Merchants National Bank, p. 59 to 73, admissible in evidence?

*This* attachment was dissolved January 3d, 1896, the same time the attachment of plaintiff in error was dissolved, and for *irregularities on the face of the proceedings,* p. 73 of the record, and was unavailable for any purpose. As to the plaintiff *therein,* may be it *also* was a trespasser, from the moment its writ was *so* dissolved,—a trespasser "ab initio." And as this single proffer of evidence embraces the writ of the Merchants' National Bank, so dissolved *January* 3d, 1896, as a part of the documentary evidence so proffered as a whole, *its* inadmissibility breaks down this assignment of error.

And the defendant below, *further,* got the full benefit of all it was entitled to in the way of diminishing the damages recovered against it, in the charge of the court and the **verdict of the jury responding to that charge, as follows:**

"Now they have proved before you, gentlemen, and that is undisputed also, that out of the proceeds of this particular property there was one thousand dollars and five cents paid on an execution against this plaintiff, and the sum of one thousand dollars derived as an homestead exemption, making the sum of $2000.05; the proceeds of this property that has gone to the benefit of the plaintiff. That amount, gentlemen, should be taken out of any amount you find to be due as compensation from the defendant to the plaintiff for this trespass. The testimony was admitted, and the proof was admitted, not as a bar to the action for recovery, but as satisfaction to that extent of any amount you might find as compensation for the injury; that is, it was admitted simply in reduction of damages."

The 11th assignment of error has no proper predicate in the record, as hereinbefore pointed out., And, if it had such predicate, the principles discussed, in considering the 10th assignment, disposes of it.

The 12th assignment of error is: "The court erred in not allowing the defendant to introduce testimony through the witness Bowden that plaintiff never requested a return of the property *when* defendant's attachment was dissolved and that he never held it at the request of the defendant *after* that."

This assignment is without support in the record; no such single proffer of testimony was made nor refused, nor exception taken to such refusal. The proffer that *was* made was a single proffer, embracing *many* matters not embraced in the assignment, pp. 56-57 of the record;—and the *single* ruling of the court as to this single proffer is as follows: "But to the admission of said *matters* so offered to be proven the plaintiff did then and there object, and the said judge did then and there sustain said objections, to which *ruling* the defendant then and there excepted."

The assignment is ill-taken, even if it were a specific assignment, based upon a single specific ruling, to which a single specific exception had been reserved.

It assumes that it was the *duty* of Grunthal, *before* he could recover in trespass the value of his property so seized and carried away to make demand for the return of the property, *after* the dissolution of the writ which made the corporation a trespasser ab initio.

The case of *Otis v. Jones,* 21 Wend. 394, cited by plaintiff in error, p. 21 of its brief, is headnoted as follows:

"When property is wrongfully taken, the subsequent appropriations of it by a sale under execution in favor of the wrong doer will not save the party from answering in damages to *the full value of the property."*

"Whether if the property after the original taking had been seized and sold under an execution in favor of a third person against the owner, such fact might not have been shown in mitigation of damages, *Quere?"* The plaintiff in error, as hereinbefore shown, got the full benefit of this *Quere.*

It will be observed, also, in reference to this assignment of error, and the alleged predicate in the record therefor, p. 56, upon which it is claimed to be based, that the offer of defendant below in this *single* proffer of testimony, thus rejected by a single ruling of the court as inadmissible, was an offer to show by Bowden: "That afterwards," that is after the seizure complained of, *"on February* 3d, 1896, the writ in favor of the Engelke & .Feiner Milling Company was dissolved; that he *knew* the writ had been dissolved on February 3, 1896." Is it not obvious that the fact, as well as the date, of the dissolution of the writ of attachment sued out by plaintiff in error was a matter of record? Was it not established by *this* record, theretofore introduced in evidence by the plaintiff below, that this writ was dissolved January 3d, 1896—? p. 50 of record; and that *this record* of the court, the original files produced before the court—*its own original* files, was as to the date of *this* dissolution, sought to be contradicted, and established as *of another* date, by Bowden's *oral* testimony?

Again, it was *not* a question, whether the owner, whose property was *so* taken should *ask* for its return; according to the authority, Drake on Attachment, section 185, c., cited by defendant, p. 9 of its brief, which we accept,—"When an attachment fails because the writ was issued without jurisdiction, or regularity, and the attacking plaintiff is sued in trespass for seizing property thereunder, he can not set up a defense that he returned the property to the defendant, *unless* the latter accepted it."

And it is clearly set forth in that section, that if legal process had intervened between the taking and its return by the trespasser to the owner, and the property had been applied to such process, such aplication is *not* the application of the tort feasor or the owner, but the act and operation of the law; and the tort feasor, because of such application by the law, is relieved *thereby* to the extent, and *only* to the extent, that the owner is entitled to so much less damages as a compensation for his injury. It proceeds upon the principle, that whether the tort feasor makes return of it to the owner, or the law applies it to the use of the owner, in either event the tort feasor is relieved, *pro tanto*, from liability to account to the owner for the *full* value of his property, thus unlawfully taken from his possession.

And the plaintiff in error, as hereinbefore shown, got every consideration, growing out of such partial return to the owner, in the law's application of it to the owner's use, the plaintiff in error was entitled to.

The 13th assignment of error is, "The court erred in refusing to permit Bowden to testify to the condition of the property *when* defendant's writ was dissolved."

There is no proper predicate for this assignment. The proffer of evidence was the single proffer embracing many matters, among others that the writ was in fact dissolved *February* 3, 1896, and that the condition of the goods was old and stock worn, at the time of the levy of the attachment, and that, at the time it was dissolved there had been no depreciation of the value thereof. The discussion of the 12th

assignment would control this assignment, even had it been properly assigned upon a proper predicate. The plaintiff below was not suing for the *depreciation* of his goods; the suit was in trespass for their unlawful taking, the damages to be recovered was their value *when* they were so taken.

The remaining assignments have been to some extent considered in the argument before the court by defendant in error on the motions to strike.

The brief of plaintiff in error on these remaining assignments proceeds upon proposition, repudiated by all the authorities, that it did *not* become a trespasser because of the seizure of the goods under its writ of attachment, which was dissolved, seeing, as is argued on p. 27 of its brief, "that this attachment was dissolved for technical defects in its bond and affidavit." And it seeks to delude itself, by quoting from *Williams v. Hunter,* 14 Amer. Dec., where "The court said p. 559, it is not for irregularly suing an attachment that this action (case for unlawfully suing out attachment) will lie." (Of course not, seeing that the appropriate action is trespass, when the attachment is dissolved for an irregularity on the face of the proceedings) "but" that *case* "will lie for suing it out for the purposes of oppression and wrong." (Of course *case,* and *only* case, will lie where the attachment is *regular* and is claimed to have been "sued out for the purpose of oppression and wrong." The plaintiff, in the further discussion of these assignments, seeks to delude itself in the hope of having this court suppose that the Florida case, *Steen v. Rose,* 22 Fla. 480, the Ala. case, *Sharpe v. Hunter,* 16 Ala. 765, and Drake on Attachment, sec. 170, have the *slightest* reference to a suit *in trespass* for seizing property under a writ of attachment which has been dissolved for irregularities on the face of the proceedings; or the slightest reference to any thing *other* than the obligations created by the execution of attachment bonds,—cases, whose solution was controlled by principles applicable to *contracts* not to *torts.*

Exceptions should never be taken to instructions as a whole, but to each instruction specifically.

*Harvey v. Tyler,* 2 Wall, 328-338-9; *Allis v. U. S.,* 155 U. S., 122; *Block v. Darling,* 140 U. S., 238.

Refusal of instructions is not error, when the party has not a right to the instruction to the full extent as stated, and in its precise terms; the court is not bound to give a modified instruction varying from the one prayed. *Catts v. Phalen,* 2 How., 376-382; *Haffin v. Mason,* 15 Wall., 674.

A. W. COCKRELL & SON,
Attorneys for Defendant.

### Statement.

On the eighteenth day of February, 1897, the defendant in error hereinafter called the plaintiff, filed his præcipe for a summons *ad respondendum* against the plaintiff in error, hereinafter called the defendant, in the Circuit Court of Duval county, Florida, and on the same day a summons was issued and placed in the hands of the sheriff for service, and a return of service made thereon.

On the first day of March, 1897, the plaintiff filed his declaration in the words and figures following: "Isador Grunthal, by M. C. Jordan and A. W. Cockrell & Son, his attorneys, complains of the Engelke and Feiner Milling Company, a corporation under the laws of the State of Missouri: For that the defendants, with force and arms, in the county aforesaid, seized, took and carried away the goods and chattels, to-wit: (here follows a long description of groceries and other personal property of a perishable nature) the property of the plaintiff of the value of ten thousand dollars, and converted and disposed of the same to its own use; and other wrongs to the defendant then and there did to the plaintiff, to the great damage of the plaintiff, etc. And the plaintiff claims twenty thousand dollars damages."

On the first day of March, 1897, the defendant filed the following motion: "And now comes the defendant, the Engelke & Feiner Milling Company, and enters its appearance specially, and not generally, and for the purpose *solely and only of moving to quash the writ issued in this behalf,*

and for ground of said motion says, that Truman D. Gib-
bens was not on the 19th day of February, 1897, nor has
he been since that date, the agent of this defendant in
Duval county, Florida, nor is he authorized to accept service
of process according to law; nor has the Engelke and Feiner
Milling Company aforesaid, been served with any process
according to law in this cause.

(Signed) W. B. OWEN,
Attorney for defendant solely
for the purpose of this motion."

This motion was supported by the oath of W. B. Owen
and the affidavits of others. The service was attempted to
be sustained by affidavits filed by the plaintiff.

On the tenth day of April, 1899, the court denied this
motion, and an exception was noted by the defendant.

On the first day of May, 1899, the defendant filed the
following plea: "Now comes the defendant by W. B. Owen
and C. H. Summers, its attorneys, and for plea to the plain-
tiff's declaration says that it is not guilty of the trespass
alleged in said declaration; and for *further plea* defendant
says that the property in said declaration alleged to have
been seized and carried away was taken into the custody
and possession of the sheriff of Duval county, Florida, in
a suit wherein the Merchants' National Bank of Jackson-
ville, a corporation organized under the laws of the United
States of America, was plaintiff, and Isador Grunthal, under
the firm name of I. & H. Grunthal, was defendant, and that
there never was any taking or seizing of the said property
in the said declaration stated, other than by the said sheriff
under and by virtue of the writ of attachment aforesaid, and
other writs of attachment.

(Signed) W. B. OWEN, C. H. SUMMERS,
Attorneys for defendant.

This plea was sworn to.

On the tenth day of July, 1899, the plaintiff filed a de-
murrer to the *further plea* of defendant setting up several
grounds therefor, among them that "said further plea"

neither traverses nor confesses and avoids the allegations in the plaintiff's declaration, and, secondly, that "it seeks by inference and indirection to avoid the trespass complained of." This demurrer was sustained on the third of August, 1899.

On the second day of May, 1900, the defendant tendered three additional pleas, pursuant to notice, and asked leave to file the same, which the court denied and the defendant excepted. The purport of these pleas is that writs of attachment issued by the Merchants' National Bank of Florida were issued at the same time as the defendant's writ and that defendant's writ was dissolved, and that afterwards the sheriff held the property under the writs of the Merchants' National Bank and that the property was sold by order of the clerk and the proceeds went to the benefit of plaintiff.

On the twenty-fifth day of May, 1900, the case was tried before a jury and the following verdict was returned by them: "We, the jury, find the defendant guilty of trespass, and assess the damages at ($5,250.00) five thousand two hundred and fifty dollars, less two thousand dollars and five cents, with 8 per cent interest from December 18th, 1895." A final judgment was entered against the defendant for $4,403.67 for his damages, and $9.03 for costs. A motion for a new trial was made and overruled. Other facts will be noticed in the opinion.

The other facts in the case are stated in the opinion of the court.

*D. U. Fletcher* for plaintiff in error.

*A. W. Cockrell & Son* for defendant in error.

Hocker, J. (*after stating the facts*).—The first assignment of error is "the court erred in denying defendant's motion to quash the writ of summons and set aside the service herein filed March 1st, 1897." In the case of *The*

*Silver Springs, Ocala & Gulf Railroad Company v. Van Ness,* decided at the January term of the present year, this court held that "a defect in the service or sheriff's return constitutes no ground for quashing the writ or abating the suit." The implication is that the motion should be addressed to the service, and seek to quash or abate it, and not the writ. Applying the ruling in the cited case, we find no error under this assignment. Whether a plea in abatement is not the proper mode of defense when the facts relied on do not appear of record—*Quaere?*

The second assignment of error is that the court erred in sustaining the plaintiff's demurrer to defendant's "further plea," following the plea of not guilty filed July 10th, 1899. This evidently refers to the plea filed May 1st, 1899, the demurrer to which was filed July 10th, 1899. We think it evident that the demurrer to this "further plea" was properly sustained.

The third assignment of error is "the court erred in making the order refusing and denying defendant's application to file the additional pleas requested and tendered May 2nd, 1900, and in refusing to allow defendant to plead the matter set up in said proposed pleas." We do not deem it necessary to make a critical examination of each of these pleas, as we think the facts set forth could have been shown under the plea of "not guilty." We do not think the court erred in refusing leave to file these pleas.

The eighth assignment of error is "the court erred in refusing to allow the defendant to introduce testimony by the witness R. F. Bowden, and the records, showing or tending to show that the said property so seized by the sheriff under said writ of attachment was not returned to the plaintiff when said attachment was dissolved for the reason that the said sheriff held the said property and retained custody of it under and by virtue of two other writs of attachment in favor of the Merchants' National Bank against said plaintiff, issued out of the same court at practically the same time as defendant's writ, or immediately thereafter, and levied

on identically the same property one minute after defendant's writ of attachment was levied, and not dissolved until after defendant's said attachment was dissolved."

The ninth assignment of error is "the court erred in not permitting the defendant to introduce testimony by the witness R. F. Bowden, and the records, to show or tending to show that the sheriff had in his possession the said two writs of attachment of the Merchants National Bank against the goods, chattels, lands and tenements of plaintiff when he exhibited defendant's writ to the plaintiff and that he exhibited said two other writs immediately thereafter, and levied them on the same property, removed the said property and held it under all said writs, and after the dissolution of defendant's attachment said property was sold under proceedings in the case in attachment of Merchants National Bank against the said plaintiff, and all proceeds went to said plaintiff and said Merchants National Bank except said sheriff's costs and defendant got nothing."

The eighth and ninth assignments of error we consider together.

The defendant introduced R. F. Bowden and offered to prove by him that on December 18th, 1895, he was the sheriff of Duval county, Florida; that late in the afternoon of December 18th, 1895, the clerk of the Circuit Court of Duval county, Florida, handed him three writs of attachment against I. Grunthal, doing business as I. & H. Grunthal—one writ for $565.83 in favor of Engelke & Feiner Milling Company (plaintiff in error)—one writ of $1,994.10 in favor of the Merchants National Bank of Jacksonville, and the third writ of $2,467.47 in favor of the Merchants National Bank of Jacksonville; that said three writs were handed to him at one and the same time; that he took the three writs and went down to Grunthal's store and exhibited the several writs in the order named to Grunthal; that he levied successively upon said goods under the three writs of attachment as shown on his return to each writ, the same inventory of goods levied upon; that afterwards, on Feb-

ruary 3rd, 1896, the writ in favor of the Engelke & Feiner Milling Company was dissolved; that he knew this writ had been dissolved on February 3rd, 1896; that he did not turn the goods back to Grunthal because he held the same identical goods under the said other writs in favor of the Merchants National Bank of Jacksonville; that the Engelke & Feiner Milling Company did not request him to hold the goods after its writ had been dissolved; but, on the contrary, notified him that its writ had been dissolved; that the said goods levied upon were old and worn stock at the time the levy was made, and were moved from Grunthal's store to the stable on Adams street; that at the time the defendant's writ of attachment was dissolved there had been no depreciation in the value of the stock of goods; that afterwards he sold the property under an order of the clerk of the court in the said writs of attachment of the Merchants National Bank of Jacksonville against Grunthal and realized therefrom the sum of two thousand, seven hundred and sixty-one dollars and seventy cents, and of the said amount of two thousand seven hundred and sixty-one dollars and seventy cents realized out of the proceeds of the attachment sale, deducted therefrom the sum of six hundred and sixty dollars and twenty-one cents for his costs and expenses in said attachment proceedings, and under an order of the court paid into the registry of the court the sum of $1,100, $1,000 of which went for exemption and $100 for costs, and the balance of said proceeds were paid to the Merchants National Bank of Jacksonville, and that defendant got nothing by its attachment." The plaintiff objected to this evidence and the objection was sustained and an exception noted.

The defendant also offered in evidence the several records of the attachment suits of the Merchants National Bank against Grunthal, including the attachments, the orders thereon and the levies thereunder (some of them made after the dissolution of defendant's attachment on the same property as was levied on under defendant's writ), the

order of sale of said property as perishable, made by the clerk on May 30th, 1896, and the order of the judge distributing the proceeds of the sale made on August 3rd, 1896. A general objection was made to their introduction in evidence, which was sustained and exceptions noted.

It is contended by the defendant in error that these assignments can not be considered because they are "alike predicated of a *single* and *the same ruling* upon a single and the same proffer of evidence as an entirety. There are in the record no *several rulings* on this proffer of evidence as an entirety." The record shows that Bowden's testimony was offered as a whole; that there was a general objection which was sustained; that the records in the attachment suits, the levies and orders therein were tendered as a whole, and that there was a general objection which was sustained. There was an exception to each of these rulings. It is evident that all this evidence tended to show one single ultimate fact, *i. e.*, that the connection of the defendant with the goods which were attached ended when its writ was dissolved and the property was still withheld from the plaintiff under other writs and suits with which the defendant was not connected, and finally disposed of under those suits. In discussing the eleventh assignment of error the defendant in error does contend that the evidence of Bowden was properly refused, because the defendant offered to show by Bowden that its writ was dissolved on the third of February, 1896, whereas the record which had been offered and read in evidence by the plaintiff showed that it was dissolved on the third of January, 1896. But we are satisfied this was a mere *lapsus linguae* on the part of the attorney offering the evidence. He certainly did not thereby intend to contradict a record in a particular which was injurious to himself, and to show he was responsible for the detention of the property a whole month longer than the record itself showed. There was no specific objection for this cause when the evidence was offered, and if there had been, doubtless the error would have been corrected. Un-

doubtedly the rule is well established that a mere general assignment of error is insufficient to present any question for review, but it is also true that just what will constitute a sufficient assignment must depend very largely upon the special circumstances of the particular case. The assignment should be sufficiently specific to give the court real aid, and a voyage of discovery through a voluminous record not rendered necessary. 2 Ency. Pl. & Pr. pp. 942-3. This court has frequently held that an assignment of error based on a general exception to several instructions, any one of which is correct, will be overruled. It is held in *Stephenson v. Flagg,* 41 Neb. 371, 59 N. W. 785, that where an assignment challenges rulings of the court in a group, if any of the rulings are correct, the assignment will not be considered further. We have not been able to discover that there was anything materially improper in any of the evidence proffered, and covered by the assignments of error under consideration; and we think the court should have admitted it. *Columbia Mill Co. v. National Bank of Commerce,* 52 Minn. 224. It is evident from the charges of the judge to the jury upon what theory the evidence of Bowden and the records offered in evidence were rejected. That theory was that the defendant became a trespasser by levying an invalid attachment on the goods of plaintiff and by the sheriff's taking them from the possession of plaintiff thereunder; that a trespasser taking personal property is responsible for their market value at the time of the unlawful taking; that if he is prevented from returning them by another wrong doer, that fact is no justification to him, nor does it go in mitigation of damages. If, however, the defendant could show that the sheriff held the property under another valid writ, that would go to the jury in mitigation of damages; and that the goods were sold under the order of the clerk made May 30th, 1896, and that after deducting several hundred dollars—costs of the sheriff in the various attachment proceedings—$2,000.05 was left, of which $1,000 was exempted to Grunthal and $1,000.05 applied on the

execution of the Merchants National Bank against him which entitled the defendant to have $2,000.05 deducted from the value of the goods at the time of defendant's levy, and that plaintiff was entitled to a judgment for the difference with 8 per cent interest from the date of the levy. We think from the various charges of the judge and remarks made in refusing to admit the proffered testimony that the foregoing was substantially his theory of the law as applied to the case.

Among others this charge was given to the jury: "You are to find, gentlemen, from the testimony according to the rules I have given you what was the market value of the property taken on the 18th December, 1895. Finding that, that is the amount of the damages less the amount of $2,000.05 with interest to be computed at 8 per cent per annum from the 18th December, 1895."

It was admitted that out of the proceeds of the goods levied on and sold by the order of the clerk under the writ of the Merchants National Bank against Grunthal the latter received $1,000 as an exemption, and that $1,000.05 was credited on an execution in favor of the Merchants National Bank against him. There is no doubt in our minds that the undisputed facts show that the defendant was a trespasser, and that the plaintiff without any proof of actual damages was entitled to a judgment for nominal damages and costs. The learned judge who tried the case charged the jury they could only find compensatory damages, and could not find punitive damages. We think this was correct, provided there was evidence from which compensatory damages could be ascertained, and upon this point we express no opinion as the case will have to be tried again. But what is the proper rule for ascertaining compensatory damages in such a case?

It is stated in the case of *Wehle v. Spelman*, 25 Hun. (N. Y.) 99, where property is wrongfully taken under an irregular attachment it may be shown in a suit brought, after the setting aside of the attachment, to recover damages

occasioned thereby, that the property was subsequently
seized under process issued in favor of another creditor of
the owner and applied to the payment of his debt. Where,
however, the parties under whose subsequent process the
property is finally taken *have acted in concert* with the at-
taching creditor, against whom the action for damages is
brought and had first wrongfully themselves issued attach-
ments, which like that of the defendant, had been set aside
as irregular, and the property after having been taken upon
such irregular attachments has never in fact been returned
to the plaintiff's possession, the fact of the subsequent seiz-
ure under valid process in their favor can have no effect
upon the defendant's liability.

In the case at bar there was no proof that the defend-
ant acted *in concert* or collusion with the Merchants Na-
tional Bank in attaching plaintiff's property.

In the case of *Marqueze v. Sontheimer,* 59 Miss. 430,
it is decided that "judgment creditors who levy executions
in consequence of an attachment are severally responsible,
and the attaching creditor is not liable for the injury occa-
sioned by them." In the body of the opinion, on page 440,
Judge CAMPBELL delivering the opinion says: "As a rule,
every one is liable for his own wrong, and not for that of
another. A wrong doer is responsible for the consequences
produced by his own act, but not for what others acting
independently of him, and for themselves, may do, even
though his act may be the occasion of their doing what they
do. That another independent agent, acting on his own
responsibility, does something because one has done a par-
ticular thing does not make such one responsible for the act
of the other. They are independent actors, and each is
answerable for his own acts, because of the want of causal
connection between the acts. Consecutive wrongs done by
independent agents can not be conjoined to increase or
enlarge the responsibility of one of them. If others attach
or levy executions, after another, and because he has at-
tached, they are responsible severally for what they do, and

the first attaching creditor is not responsible for any injury occasioned by the acts of the others, although they merely followed his example." In the case at bar it not only does not appear that there was any causal connection between the attachments of the Merchants National Bank and the defendant, but it does not even appear that the former merely followed the example of the latter.

In the case of *Montgomery v. Wilson*, 48 Vt. 616, it appears that "defendants were trespassers in taking and driving away plaintiff's cattle, but the cattle were taken from defendants' possession on writs of attachment against the plaintiff, and subsequently sold, and the avails thereof applied on executions against the plaintiff. Held, that defendants were liable for damages only up to the time of the attachment, irrespectively of whether the officer proceeded legally with the property after the attachment or not."

In the case of *Kaley v. Shed*, 10 Metcalf, 317, the opinion is written by Chief-Justice SHAW, and it is held that "in an action of trespass for goods taken and carried away which the plaintiff before action brought demanded to be returned to him, and which the defendant promised to return, and which were attached on a writ against the plaintiff, while the defendant was preparing to return them, the measure of damages is the same that it would have been if the defendant had returned the goods."

In the case of *Anderson v. Land*, 5 Wash. 493, 32 Pac. Rep. 107, S. C. 34 Am. St. Rep. 875, the court adjudicates the effect of a dissolution of an attachment and holds the lien of an attachment is ended when the attachment is dissolved, and after such dissolution the owner of the property attached can dispose of it as he sees fit, whether it has been actually turned over to him by the officer or not.

Under the authority of these cases, as well as upon principles of natural justice, we think the rule for ascertaining the actual damages of the plaintiff in this case under the evidence of the plaintiff and that proffered by the defendant, is the difference between the value of the property

seized under defendant's writ of attachment, at the time of seizure, and the value of the said goods on the day when the said attachment was dissolved; and that the defendant ought not to be held liable for any damage to or depreciation in value which might have occurred between the last named day and the day of the sale of the property under the alleged order of the clerk of May 30th, 1896, upon the alleged petition of the Merchants National Bank under its writs. No sort of combination or connection between the defendant and the Merchants National Bank in causing their several writs to be issued is shown or attempted to be shown. The description of the articles mentioned in the declaration shows many of them to have been of a perishable nature, and it is probable that there may have been more or less depreciation in value between the date of the dissolution of defendant's writ and the time of sale. It follows, that although the court seems to have attempted to apply the principle of mitigation of damages, yet in our judgment it was not the correct one, for whatever depreciation may have taken place between the date of the dissolution of defendant's writ of attachment and the date of sale, was not under the proffered evidence because of defendant's wrong. In the nature of things such depreciation and damages must have been the result of the sheriff's holding the property under the other writs, and selling them at an enforced sale under such other writs, with which the defendant had nothing to do, and which he could not control. No way was open to it of taking the goods from the sheriff and of returning them to the owner or of disposing of them. They were in *custodia legis*. If the property was held from the eighteenth of December, 1895, until the third of January, 1896, under the writs of the Merchants National Bank, as well of that of the defendant, they would each be liable for all the damage or depreciation in value of the goods which occurred during that time. We think the court should have admitted in evidence to the jury the records of the Merchants National Bank suits, and the testimony of Bowden,

which were proffered by the defendant. It follows, therefore, that in our opinion the eighth and ninth assignments of error are well taken.

It is unnecessary to examine the remaining assignments, as whatever errors they may show result from the theory of law upon which the court tried the case, and which, so far as this case is concerned, we think was incorrect.

Motion was heretofore made by the defendant in error to strike various matters from the transcript, which motion was continued until the final hearing of the cause; this motion is disposed of by the following order: The judgment of the court below is hereby reversed and a new trial ordered, at the cost of the defendant in error, except that the plaintiff in error shall be taxed with the cost of transcribing the following matters into the transcript of record, which are improperly included in such transcript, *viz*: The special appearance and motion of the defendant below to quash the writ of summons, and the affidavits filed in support thereof and in opposition thereto, and the ruling of the court thereon and the exception of the defendant thereto, found in the record proper at pages five (5) to nine (9) inclusive. Also the motion for leave to file additional pleas with the pleas offered therewith and the order of the judge denying such motion and the exception of the defendant thereto, found on pages eleven and a half (11½) to sixteen (16) of the record proper inclusive. All of said matters being matters proper to be exhibited to an appellate court only in and by a bill of exceptions and having no place in the record proper of the cause.